NEWTON D. HEILMAN ET AL., APPELLEES, V. SAMUEL REITZ ET AL., APPELLANTS.

FILED JUNE 13, 1911. No. 16,400.

1. **Wills: CONSTRUCTION.** In construing the provisions of a will, the following rules must be adhered to: First, if the will is ambiguous, the law favors the heir in preference to one not related to the testator by blood; second, heirs will not be disinherited by

conjecture, but only by express words or necessary implication; third, actual disposition of the estate to another person is necessary to deprive the heir of the property of his ancestor.

2. ————: ————. The will of the testator gave to his widow two-fifths of the net income of his estate during her life. It directed that after her death the property of the estate be sold by trustees and the proceeds divided among his three heirs and four church corporations, each taking one-seventh. This was all that was bequeathed to them by the will. Under this bequest they were entitled to nothing more. The three-fifths of the net income of the estate was not mentioned in the will nor bequeathed to any person or corporation. *Held*, That it descended to the widow and heirs under the statute as intestate property, each taking one-fourth thereof.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed with directions.*

*Field, Ricketts & Ricketts,* for appellants.

*Tibbets & Anderson, Clark & Allen* and *George W. Berge, contra.*

REESE, C. J.

Jonathan Reitz, a resident of Lancaster county, died April 12, 1906, leaving as his widow the defendant Catherine L. Reitz, and as his children and heirs at law the defendants Samuel Reitz, David Reitz and Jonathan Reitz. He was the owner of an estate of the value of about $20,-000, which consisted of a farm of 320 acres of land, in Lancaster county, and his homestead of much less than $2,000 in value, in the village of Waverly, in said county, and some personal property. On the 28th day of November, 1905, he executed his last will and testament, which after his decease was duly admitted to probate by the county court of Lancaster county. The will, with the exception of the formal parts, is as follows:

"First. I direct that as soon after my decease as practicable my executors shall pay off and discharge all of my indebtedness including my funeral expenses.

"Second. I give, bequeath and devise to my wife, Catherine L. Reitz, the exclusive use of the property located in Waverly, Nebraska, which is now occupied by me and my family as a homestead, during the period of her natural life.

"Third. I furthermore give and bequeath to my wife, Catherine L. Reitz, two-fifths of the entire net income of all the remainder of the real estate of which I may die seized, during the period of her natural life, the same to be paid to her by my executors and trustees as hereinafter provided.

"Fourth. After the payment of all my debts and obligations and costs and expenses of administration of my estate from the proceeds of my personal property, I give and bequeath to my said wife all of my household furniture and one-fourth of the remainder of my personal property.

"Fifth. As soon after the death of my wife Catherine L. Reitz as practicable, I direct that my executors and trustees, hereafter named, make sale of all of my property both real and personal, not heretofore disposed of, and which may be at that time remaining, and convert the same into cash, and for the purpose of accomplishing the provisions herein made, I hereby authorize and empower my said executors and trustees to give good and sufficient warranty deeds conveying the said real estate to the purchasers thereof, and to convey all and every title and interest thereto which I would have a right to convey if I were living.

"Sixth. After my said estate shall be turned into cash as above set forth, I direct that the same shall be divided into seven equal parts, and to each of the following named parties and corporations I give, devise and bequeath one of each equal parts, to wit: to my son Samuel Reitz, one part, to my son David Reitz, one part, to my son Jonathan Reitz, one part, to the Board of Church Extension of the General Synod of the Evangelical Lutheran Church of the United States, one part, to the Trustees of the Midland College at Atchison, Kansas, one part, to the Board of Home Missions

of the General Synod of the Evangelical Lutheran Church of the United States, one part, and to the Board of Foreign Missions of the Evangelical Lutheran Church of the United States, one part, and I direct that my executors and trustees pay the said bequests as above provided.

"Seventh. For the purpose of carrying on the provisions of this will I hereby name and appoint Newton D. Heilman and Samuel E. Heilman, of Lancaster county, Nebraska, as my executors and trustees, and give them full power to act in all matters necessary for the carrying out of said provisions."

The persons nominated in the will as the executors qualified and were duly appointed as such, settled up the estate, made their final report, were discharged, and entered upon their duties as trustees. In the management of the estate quite a fund has accumulated, mostly from the rentals of the farm, and which is in the hands of the trustees, with the exception of the two-fifths thereof which has been paid to the widow. The remaining three-fifths is claimed by the heirs as a portion of the estate undisposed of by the will, while the religious corporations named in the will insist that the fund, with its increase, should remain in the hands of the trustees until the decease of the widow, Catherine L. Reitz, when it, with the proceeds of the sale of the land, should be divided among the legatees named in the sixth clause of the will. If no part of the fund belongs to the legatees, other than the heirs, the heirs are entitled to it as it accumulates, and are entitled to the immediate payment of what is now in the hands of the trustees. The trustees being in doubt as to their duties, and for the purpose of their protection and of obviating the necessity for future litigation, filed their petition in the district court, making all legatees and the widow parties to the suit, and asking for a construction of the will and instructions as to their duties. All defendants answered setting up their claims, and making their demands in accordance with their contentions. The cause was tried to the district court, when a decree was entered finding generally in favor of

plaintiffs and the legatees, other than the widow and heirs, and against them. It was found that the trustees should continue to hold the net income of the estate, less the widow's two-fifths, until the death of the widow, and upon the happening of that event the fund should be divided into 7 parts and distributed according to the terms of the will. A decree was entered in accordance with the findings. Samuel Reitz, David Reitz, Jonathan Reitz, and the widow, Catherine L. Reitz, appeal.

At the time of the trial, which was in April, 1909, the widow was said to be about 65 years of age, possibly a little older. At the time of the death of her husband, the testator, her age was probably about 62 years. Assuming that she was in the enjoyment of normal health, her life expectancy was about 13 years. It would not be contrary to nature for her to exceed that time by 5 to 10 years, or even longer. Three-fifths of the annual rental is about $900 a year. At the time of the death of the widow, assuming that she should die at the end of her expectancy of life, the fund in the hands of the trustees would be not far from $12,000, to say nothing of its increase from investment. If loaned out each year as it accumulated, at the highest obtainable rate of interest, upon good security, it would, of course, be much more. There is no direct provision in the will disposing of this fund, nor authority to the trustees to invest it or cause it to increase by the accumulation of interest. If the contention of the church corporation legatees is the correct one, the trustees might, so far as the provisions of the will direct, hold the money in their possession until the death of the widow and the subsequent sale of the real estate and the conversion of the price into cash. There is no direct requirement that the property be sold for cash, and it would be quite reasonable that time should be given for the payment of a part of the purchase price. There is no provision in the will requiring the trustees to give bond or other security for the faithful accounting of the fund by them, nor do we find any direct provision for the possession and renting of the

real estate by the trustees, except as might be inferred from the clause requiring them to pay the two-fifths of the net income thereof to the widow, and the general clause at the closing part giving the executors and trustees "full power to act in all matters necessary for the carrying out of said provisions," which we think must mean the provisions requiring the sale of the property of the estate and the division of the funds arising therefrom. _

In considering the construction of wills, there are certain fundamental rules which should be adhered to: First. If the will is ambiguous, the law favors the heir in preference to one not related to the testator by blood. *Pendleton v. Larrabee,* 62 Conn. 393; *Downing v. Bain,* 24 Ga. 372; *Miller v. Hirsch,* 110 La. 259; *Vail v. Vail,* 10 Barb. (N. Y.) 69; *Mullarky v. Sullivan,* 136 N. Y. 227; *Bane v. Wick,* 19 Ohio, 328; *Davis v. Davis,* 62 Ohio St. 411; *Malone v. Dobbins,* 23 Pa. St. 296; *Biddle's Estate,* 28 Pa. St. 59. Second. Heirs will not be disinherited by conjecture, but only by express words or necessary implication. *Wilkins v. Allen,* 18 How. (U. S.) 385; *Wright v. Hicks,* 12 Ga. 155; *Young v. Quimby,* 98 Me. 167; *Leigh v. Savidge,* 14 N. J. Eq. 124; *Bane v. Wick, supra; Crane v. Doty,* 1 Ohio St. 279; *Bender v. Dietrick,* 7 Watts & Serg. (Pa.) 284. Third. That actual disposition of the estate to another person is necessary to deprive the heir of the property of his ancestor. *Wright v. Hicks, supra; Haralson v. Redd,* 15 Ga. 148; *Bourke v. Boone,* 94 Md. 472; *Zimmerman v. Hafer,* 81 Md. 347; *Hurst v. Von De Veld,* 158 Mo. 239; *Schauber v. Jackson,* 2 Wend. (N. Y.) 13; *Hitchcock v. Hitchcock,* 35 Pa. St. 393; 30 Am. & Eng. Ency. Law (2d ed.) 668.

With these rules in mind, we proceed to consider the provisions of the will. Two-fifths of the entire net income of the real estate is bequeathed to the widow during her life. (We do not deem it necessary to notice other bequests to her.) This is the only reference to the income of the real estate, but it is apparent that the testator had that income in mind. By the fifth clause of the will the

executors are to "make sale" of all "property, both real and personal," remaining, and "convert the same into cash, and for the purpose of accomplishing the provisions" made in the will, and in order that this purpose might be carried out, he gave authority to convey the real estate. By this language it is not apparent that the testator was considering the income of the real estate as a part of that property. Indeed, it seems clear that he was not, as that fund would be already in "cash" and no conversion would be necessary. By the sixth clause it is provided that after the estate "shall be turned into cash as above set forth" (meaning as set forth in the fifth clause), "the same (that is the cash resulting from the sale of property) shall be divided into seven equal parts," and one-seventh part is to be given "to each of the following named parties and corporations." The "parties" named are the three sons, Samuel, David and Jonathan, and the corporations are the ecclesiastical corporations named. This disposes of the fund arising from the sale of the property, but nothing more. There is nothing in the will which by any possible construction or implication gives to the church corporations anything in excess of that named in the sixth paragraph, and we cannot extend its provisions. A consideration which appeals somewhat to the reason of the writer is the fact that the testator had three sons and no other lineal descendants. He gave to his wife two-fifths of the income of the real estate. This left of that fund three-fifths undisposed of. Without a knowledge of the law of descent of personal property as it existed at that time, it would seem reasonable that he may have supposed that the three sons would receive each one-fifth, which would dispose of the whole fund, and therefore did not bequeath it to the church corporations. Whether the failure to make a complete disposition of that fund was an oversight of the testator, or of the scrivener who wrote the will, it is not necessary to inquire, as it seems clear that the three-fifths were not bequeathed to any one, and hence became intestate and descended to the testator's

heirs. By the law in force at the time of the death of the testator the widow of a decedent took the same interest in intestate property as a child of the intestate. The fund under consideration not having been disposed of by the will, and there being three children, she, with each, took one-fourth of the three-fifths of the net fund, and to which they are entitled as soon as the amount is collected and the shares can be ascertained, but subject to the payment of taxes on the land, making repairs thereon, and the necessary expense of administration.

Other questions, growing out of the application of the income fund, as to the payment of taxes and making repairs upon the homestead property, are presented, but as that net fund belongs to the widow and heirs, she to have two-fifths of the whole and one-fourth of the remaining three-fifths, it is thought no other questions need be discussed or decided. The parties have presented very able and exhaustive briefs upon the law of the construction of wills, citing many cases, but in our view of the case it is not deemed necessary to follow them, for the reasons herein stated. It is not the belief of the writer that there is any ambiguity in the will. The legatees not of the blood can take only what is given them, either by express words or necessary implication. The income of the land was not bequeathed to them and therefore goes to the widow and heirs; but, were we persuaded that there is any ambiguity, we should still hold that, as the law favors the heirs, they are entitled to have the fund follow the course prescribed by statute.

The decree of the district court is reversed, and the cause is remanded to that court, with directions to enter a decree commanding the trustees to pay out of that fund, first, the taxes and for repairs upon the property, from which the fund arises, necessary to maintain it in the condition in which it was at the time of the decease of the testator, together with the costs and expenses of administration; second, to pay the widow the two-fifths of the net income as directed by the will; third, to pay to the

widow and the heirs Samuel Reitz, David Reitz and Jonathan Reitz, each, one-fourth of the remaining three-fifths of the net income thereof; and that the costs of this proceeding be taxed to the Board of Church Extension of the General Synod of the Evangelical Lutheran Church of the United States, the Trustees of the Midland College at Atchison, Kansas, the Board of Home Missions of the General Synod of the Evangelical Lutheran Church of the United States, and the Board of Foreign Missions of the Evangelical Lutheran Church of the United States.

REVERSED.