· IN RE ESTATE OF JOHN HENRY ZIMMERMANN.
ANNA MARY P.OTHAST ET AL., APPELLANTS, V. RALPH H.
ZIMMERMANN, APPELLEE.

FILED MARCH 18, 1932. No. 28153.

*Chambers & Holland* and *C. Russell Mattson*, for appellants.

*Lewis & Nuss, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ.

DAY, J.

This action involves the construction of a will. That part of the will pertinent to the determination is: "Second, I give and bequeath unto my children, Esther, Helen, Annie, Myrtle and the baby, whose name I do not know, the sum of Five Dollars each. Third, I give, bequeath and devise unto my boys Ralph H. Zimmermann and Daniel S. Zimmermann all the rest and residue of my property, of every name, nature and amount, of which I may die seised or possessed, to be theirs absolutely." The boy, Daniel S. Zimmermann, named in the above residuary clause, died in 1918, while the testator died in 1930. The county court held that the bequest of one-half of the residue given to the deceased son Daniel lapsed, and "that said lapsed portion of the estate, being undisposed of by the terms of the will, descends as intestate property." Upon appeal to the district court, the judgment of the county court was reversed, and it was held that the surviving residuary lega-

tee and devisee, Ralph H. Zimmermann, was entitled to the entire residue of said estate.

The will was executed in June, 1909, following the divorce of the parents of the parties herein, in November, 1908. The decree of divorce gave the care, custody, education and support of the children, Esther, Helen, Anna, Myrtle and Maynard exclusively to the mother and the father was enjoined from meddling or interfering with them. By the same decree, the father, the testator here, was given the care, custody, education and support of Ralph and Daniel. Thus, the family was separated into two separate and distinct units by this decree. The father had practically no property at this time and the entire estate represents the accumulation since. The evidence demonstrates that he and the boys, Ralph and Daniel, worked together and each contributed to the estate. There was little, if any, social relations between the two divisions of the family. These are the circumstances surrounding the execution of this will.

It is urged by the appellants that the overwhelming weight of authority supports the view, in the absence of a statute, that, where one of two residuary legatees predeceases the testator, the legacy of such a legatee lapses and becomes intestate estate passing to the heirs or distributees, providing it was bequeathed to the residuary legatees in common, and not as a class, unless the intention of the testator to that effect clearly appears. This is substantially the statement in the annotation in 28 A. L. R. 1237. We refer to the comprehensive citation of cases there, which are too numerous to be cited here. The only exceptions to this rule seem to be the pronouncements of the courts of Kansas and Indiana. *Corbett v. Skaggs,* 111 Kan. 380, *Gray v. Bailey* (1873) 42 Ind. 349, and *Holbrook v. McCleary* (1881) 79 Ind. 167. However, the last two cases cited do not discuss the rule.

The rule is a legacy to American jurisprudence bequeathed to us as a part of the common law of England. The English courts, as far as our investigation informs

us, have never departed from this rule, although it has been criticized. For example, it has been said: "There is a well-known rule that where residue is given to tenants in common, and one of the tenants in common dies in the testator's lifetime, the lapsed share does not go as an accretion to the gift to the other tenants in common, but it is held that there is an intestacy and the share goes amongst the next of kin. That is, there can be no residue of a residue. The arguments by which this rule was arrived at are perfectly intelligible and, one may say, plausible. Nevertheless I think that the effect of it is to defeat the testator's intention in almost every case in which it is applied; but it is a rule by which I am undoubtedly bound." *In re Dunster* (1909) 1 Ch. (Eng.) 103. Likewise, it has also been criticized by some American courts, an example of which is: "The rule thus established does not commend itself to sound reasoning, and is a sacrifice of the settled presumption that a testator does not mean to die intestate as to any portion of his estate, and also of his plain actual intent, shown in the appointment of general residuary legatees, that his next of kin shall not participate in the distribution at all. The rule is in fact a concession to the set policy of English law, nowhere more severely asserted than in chancery, to keep the devolution of property in the regular channels, to the heir and next of kin, whenever it can be done. If this question were new in this state, speaking for myself I should not hesitate to reject the English rule as wrong in principle and subversive to the great canon of construction, carrying out of the intent of the testator." *Gray's Estate,* 147 Pa. St. 67. At a later date the same court referred to the rule in the following language: "The English rule, as we said in *Gray's Estate,* 147 Pa. St. 67, does not commend itself to sound reasoning, or to the preservation of the testator's actual intent, but we found it recognized and accepted in our own cases before these particulars in its application arose, and we felt ourselves bound by it." *Waln's Estate,* 156 Pa. St. 194.

The composite criticism of the rule gathered from many cases, including the ones cited herein, is that the application of the rule usually defeats the intention of the testator. This being a case of first impression in this state, our course is not charted and we are neither handicapped nor assisted (depending upon the reader's personal view) by former decisions. But the choice as to whether we shall follow the unquestioned weight of authority or shall disregard the multiple pronouncement of able and learned courts has been taken from us in the determination of this case by legislative enactment. This is true, because there are special features of the will under consideration which require a decision in favor of the surviving residuary legatee. Section 76-109, Comp. St. 1929, provides: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation of conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true interest (intent) of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law." This statute applies to wills. *Reuter v. Reuter,* 116 Neb. 428, *Krause v. Krause,* 113 Neb. 22, and *In re Estate of Darr,* 114 Neb. 116, are a few of many cases so holding. Many years ago this court stated: "It is a well-established rule of law that, in the construction of a will, the intention of the testator as disclosed by the words used in the instrument, in connection with surrounding circumstances, must be carried into effect." *Lesiur v. Sipherd,* 84 Neb. 296. See *Heywood v. Heywood,* 92 Neb. 72.

It is the unanimous opinion of this court that the intent of the testator can be determined from the will considered in its setting of surrounding circumstances. When this will was executed, the family of this testator had been divided into two separate and distinct integral units by judicial decree. Each unit was to pursue its course in life without dependence on or interference from the other. One division was the father and the two boys mentioned

in the residuary clause of the will. By their joint efforts, this estate of approximately $9,000 was accumulated after the divorce and separation of the testator from his wife. By the provision of $5 each for the children, whose custody was awarded to the mother, the testator evidenced his intention that they should receive so much and no more. This is more apparent from the nominal sum of the bequest than it would have been had the bequest been for a substantial sum. If these bequests had been for a substantial sum it might have been argued with some persuasiveness that the testator did not intend to increase the share of a residuary legatee. However, the unquestioned intention of the testator was to limit the children from which he was separated to a nominal bequest. This intention could not have been more apparent than it is, if he had added the words "and no more" to the end of the sentence providing for the bequests. This view finds support in *In re Ives' Estate*, 182 Mich. 699. In this way he divided his heirs at law into two classes. One class, the children given into the custody of the mother, the other class, the children entrusted into his care. A natural classification for him to make, in view of the circumstances surrounding the testator at the time the will was made. To the latter class he bequeathed all the residue of his estate, after paying legal requirements and the nominal bequests provided to prevent the children of the first class from deriving any substantial benefit from his estate. The residue was intended to go to the children who remained with him. This view of the will, even if we followed the majority rule, would put this case within an exception to the general rule—that the share of a residuary legatee who predeceased the testator lapses. However, it is also indicative of the intention of the testator, which is the objective of our investigation in this case.

Because of the early demise of one, prior to the death of the testator, he took nothing under the will. To hold that one-half of the residue should be divided as intestate property would defeat the expressed intention of the tes-

tator by the will interpreted in the light of the surrounding circumstances. The survivor takes under the residuary clause because it was the obvious intention of the testator, gathered from the four corners of the will. This conclusion is aided somewhat by the presumption that one who makes a will does not intend any of his property to be divided as though he died intestate. *Jones v. Hudson,* 93 Neb. 561. The surviving legatee does not take as a joint tenant. There is no question of joint tenancy involved, since the interest does not vest in a legatee at the time of the making of the will but at the time of the death of the testator. From the will, and the circumstances surrounding the testator at the time it was executed, we construe it as the intention of the testator, where he left a nominal bequest to one class of children and the residue to another class consisting of two, one of whom predeceased him, that the surviving residuary legatee should take the entire residue.

We are of the opinion that, from the will and the conceded facts, our conclusion is justified. It is therefore unnecessary to consider the admissibility of certain evidence, concerning which appellants complain, for that without that evidence the same result should be reached. The judgment of the district court is accordingly

AFFIRMED.