DWIGHT ROBERTS ET AL., APPELLANTS, V. LENNIE ROBERTS ET AL., APPELLEES.

23 N. W. 2d 774

FILED JULY 12, 1946. No. 32061.

*Armstrong & McKnight, Fred G. Hawxby,* and *Dwight Griffiths,* for appellants.

*Ferneau & Ferneau, Peterson & Devoe, Vinson, Elkins, Weems & Francis,* and *W. Deakins, Jr.,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

This case involves the construction of a will to determine whether or not it devised a fee simple title in real estate to a son, or a life estate to the son with remainder to his named children. The trial court held it devised a fee simple estate. We reverse the decree of the trial court and hold that the will devised a life estate with remainder to the children, and direct a decree accordingly.

So far as this appeal is concerned, the action concerns the plaintiffs, who are the grandchildren of the testator, and the defendant Lennie Roberts, who is a daughter-in-law of testator, but not the mother of plaintiffs.

Charles W. Roberts died November 11, 1932, a resident of Nemaha County, Nebraska. His will was admitted to probate on December 9, 1932. In it he provided for the payment of his debts and then made the following provisions:

"SECOND, After the payment of such funeral expenses and debts, I give, devise and bequeath unto Lockie McDully (sic), my daughter, The West Half of the Northwest Quarter in Section 15, Township Four (4) Range Fifteen (15), in Nemaha County, Nebraska. That she cannot mortgate (sic) same for any purpose and at her passing away the land becomes the property of my granddaughter, Ole McCully without a dowry right to her father.

"THIRD: I give, devise and bequeath unto my daughter, Pearl Duncan, The East Half of the Northwest Quarter of Section (15), Township Four (4), Range ·(15), in Nemaha County, Nebraska, that she shall not place any mortgage on same, and if she should pass away said land to go to her boy Robert T Duncan without a dowery (sic) right to his father.

"FOURTH: I give, devise and bequeath unto Clyde Roberts, my son, The South Half of the Southwest Quarter of Section Ten (10), Township Four (4), Range 15, in Nemaha County, Nebraska, and if he should pass away, said land is to be divided equally between his two children, Dwight Roberts and Darlene Roberts, his daughter.

"FIFTH: After the payment of such funeral expenses and debts, I give, devise and bequeath unto my beloved wife, Jennie Roberts, all moneys, notes or bonds. Should the care of said land become too burdensome for my said wife, Jennie Roberts, she may, if she choses (sic), sign over to each of said children what will be theirs, and each child must pay a rental to her, the said Jennie Roberts, the sum of $2.50 per acre until the date of her death. Each child must pay the taxes each year and $2.50 a pear (sic) an acre to their mother if she would rather do that way. She would not have the care of the land.

"SIXTH: In the event that May Roberts remains the widow of Ole Roberts, my deceased son, the Nemaha town house and the five Lots Nos. 4, 5, 6, 7 & 8 in Block 65, shall be hers so long as she lives."

"EIGHTH: After the death of my said wife, Jennie Roberts, I give, devise and bequeath unto Pearl Duncan, my daughter, the sum of Three Hundred ($300.00) Dollars; to my son, Clyde Roberts, the sum of Two Hundred ($200.00) Dollars, and the balance after said payments, to be divded (sic) equally between my said three children, Clyde Roberts, Pearl Duncan and Lockie McCully."

The will offered in evidence shows the month and day of execution to be blank and the year of execution 1932. However, the will as pleaded by plaintiffs recites October 1932, and defendant admits the allegation regarding the will. The will as offered in evidence has an "In Witness Whereof" sentence. The blank spaces for the day and month are not filled in. There is a line for a signature followed by "Seal." It was not used. The testator's signature appears below the attestation clause and to the right of the signatures of the witnesses.

It appears from the petition for probate that Lockie McCully, Pearl Duncan, and Clyde Roberts were the surviving children of deceased. Clyde Roberts, named in paragraph "FOURTH", died October 21, 1942. By the will he bequeathed $100 to each of his children, Darlene Roberts

and Dwight Roberts, and the balance of his estate he devised to his wife, Lennie Roberts.

Upon the death of Clyde Roberts, a question arose as to the title to the land devised to him in the will of Charles W. Roberts. Did Clyde Roberts receive a fee simple title, or a life estate with remainder to Dwight Roberts and Darlene Roberts?

Plaintiffs, Dwight Roberts and Darlene Roberts Smith, contending that Clyde Roberts received only a life estate with remainder in them, brought an action in the district court seeking to have title quieted in them as tenants in common. It is admitted that the will erroneously described the property, but the land devised is not in dispute as to that.

The trial court sustained a demurrer to their original petition. Thereafter by amended petitions they pleaded matters extraneous to the will, setting out the age and condition of health of the testator, his realization of impending death when the will was executed and that it was self-drawn on a printed form, his affection for the plaintiffs, his own construction of the will and that placed upon it by Clyde Roberts during his lifetime, recognizing his title to be only a life estate. All these allegations were on motion stricken by the trial court.

At the trial the court admitted in evidence the two wills and the proof of probate thereof; that the will of Charles W. Roberts was executed in his home in September 1932; that Clyde Roberts was about 50 years of age at that time; that plaintiff, Dwight Roberts, usually spent his vacations at his grandfather's home; that plaintiff, Dwight Roberts, had paid the taxes on the land since the death of their father; and that the defendant widow of Clyde Roberts is not the mother of the plaintiffs, she and Clyde Roberts having been married in 1920.

The trial court denied offers to prove that at the time of the execution of his will, Charles W. Roberts was suffering from cancer, was conscious of impending death and

died within 60 days thereafter; that the plaintiffs visited with and often spent vacations with their grandfather and were friendly and cordial. The court further denied offers to prove statements of Clyde Roberts that he had only a life estate under the will and that the remainder was in the children.

Plaintiffs assign here that the trial court erred in sustaining the demurrer to their original petition; in striking allegations of extrinsic facts and circumstances from their amended petition; in excluding evidence of extrinsic facts and circumstances as an aid in the construction of the will; in construing the will to have devised the fee simple title to Clyde Roberts; and in quieting title in Clyde Roberts, devisee.

"In the construction of a will, the court is required to give effect to the true intent of the testator so far as it can be collected from the whole instrument, if such intent is consistent with the rules of law." Ingraham v. Ingraham, 145 Neb. 330, 16 N. W. 2d 445. " 'Parol evidence is inadmissible to determine the intent of a testator as expressed in his will, unless there is a latent ambiguity therein which makes his intent obscure or uncertain.' * * * Where in a will there is a patent ambiguity resulting from the use of words, and nothing appears within its four corners to resolve or clarify the ambiguity, the words must be given their generally accepted literal and grammatical meaning." In re Estate of Pfost, 139 Neb. 784, 298 N. W. 739.

The question here is: What was testator's intent from the words "if he should pass away" as used in paragraph "FOURTH"? There is no contention but that "should pass away" means "should die." About that eventuality there can be no uncertainty.

The question then resolves down to the meaning of "if" as here used. The uncertainty appears upon the face of the instrument and is involved in the words themselves. It is not a latent ambiguity. Parol evidence then is not to be considered in determining the intent of the testator. The

determination depends upon what is found within the four corners of the will itself. Is there anything within the four corners of the will to resolve or clarify the ambiguity? Plaintiffs argue that the word "if" should be construed as meaning "when" and that the clause should be construed as meaning "when he dies." Defendant argues that the words should be construed "if he dies during my lifetime."

Defendant relies upon the rule expressed in 69 C. J., Wills, § 1325, p. 299, as follows: "While provisions for a gift over on the death of a designated person without more must be accurately fulfilled before such gift can take effect, the general rule is that, where a will, in providing for immediate gifts to designated beneficiaries, provides further for a gift over in the event of the death simpliciter of any of the named beneficiaries, for the gift over to be effective, the death referred to must, in the absence of words in the will indicating a contrary intent, occur before the death of the testator." Are there words in the will indicating a contrary intent? The testator's intent controls. The next sentence in the text is: "In accordance, however, with the cardinal rule of construction that the testator's intention shall control, if it appears from the will and the surrounding circumstances that it was the intention of the testator that the gift should take effect on the death of a beneficiary whenever such death occurred, as well after as before the testator's death, such intention shall be given effect."

Defendant further relies upon the following: "Death comes to everyone. Its happening is not contingent. The time of its happening is. If testator gives a fee or an absolute interest in personalty to one to take effect at testator's death, with a gift over in case the beneficiary should 'die,' the question is presented whether such provision refers to the death of the beneficiary before that of testator, or at any time, either before or after the death of testator. Since death itself is not contingent, and since language importing a contingency is used, such language is absurd unless there is an unexpressed contingency with reference to the time

of such death and its relation to some other event. The. weight of authority is that such provision means, prima facie, death before that of testator." 3 Page, Wills (Lifetime ed.), § 1291, p. 778. That authority in the same section further states: "The presumption as to the time of a death referred to in the will is only a prima facie rule of construction for ascertaining the intent of the testator." P. 780. Also, "The context may show that death of the beneficiary after that of testator was contemplated." P. 781.

Defendant relies upon Schnitter v. McManaman, 85 Neb. 337, 123 N. W. 299. In that case there was a devise to a son " * * * to have and to hold forever. In event of the death of John N. Barrett without lawful issue born, the property herein bequeathed to him shall immediately become the property of my daughter * * * ." The son survived the testator and died without issue. The question was: Did the son have a defeasible title? In the opinion we said: "A devise to one in fee, and in the event of his death to another in fee, refers to death during the testator's life, because the event cannot be said to be contingent, and it seems more compatible with reason to say that the testator by the use of the words was providing a substitute for the first taker, should that devisee not survive the testator. When, however, the death of the first taker is coupled with other circumstances which may or may not ever occur, a devise over has been upheld by many eminent courts." Defendant relies upon that language. The first sentence in the quoted provision suggests the question: Does the language of this will suggest that the testator intended that his grandchildren, the plaintiffs, should be a "substitute for the first taker, should that devisee not survive the testator"? It does not follow, as argued by defendant, that the application of the rule may only be avoided when "the death of the first taker is coupled with other circumstances which may or may not ever occur." For immediately following that statement we said: "The rule that the words of limitation shall be applied to the death of the first taker without issue dur-

ing the life of the testator is said to be extremely technical in its character and does not apply where there are indications, however slight, that the testator referred to death subsequent to his own demise." This suggests the inquiry: Are there indications in this will "however slight" that the testator referred to death subsequent to his own demise? In the above case we went to the language of the will for an answer. The net of the opinion was that we held that the contingency "in the event of death" meant "whenever" the son died subsequent to the date of the testator's death.

Defendant further relies upon In re Estate of Willits, 88 Neb. 805, 130 N. W. 757. There we stated the general rule that "* * * where there is a legacy to a person absolutely, and a provision that in case of his death the estate shall revert to another, the contingency referred to is the death of the first taker before the death of the testator; but special circumstances will prevent the application of this general rule." This was immediately followed by adopting the rule of application last quoted above from Schnitter v. McManaman. We then said: "It is elementary that in the construction of a will it is the duty of the court to effectuate the intention of the testator if it can be ascertained, and in order to ascertain this intention the court should place itself as nearly as possible in the position of the testator, and consider not only the particular clause of the will which is in dispute, but the whole instrument." We stated that, standing alone, the two provisions construed under the general rule would apply to death before the death of the testator, but we also took into consideration "other clauses" and the circumstances existing when the will was made, including the apparent desire of the testator that his property should remain in the family. In the syllabi we stated the rule: "The general rule is that the period of time to which survivorship relates depends upon the intention of the testator, rather than upon technical language used in a particular clause in a will."

There are other rules of construction which are applicable here.

"In construing the provisions of a will, the following rules must be adhered to: First, if the will is ambiguous, the law favors the heir in preference to one not related to the testator by blood; second, heirs will not be disinherited by conjecture, but only by express words or necessary implication; third, actual disposition of the estate to another person is necessary to deprive the heir of the property of his ancestor." Heilman v. Reitz, 89 Neb. 422, 131 N. W. 909.

In Herter v. Herter, 97 Neb. 260, 149 N. W. 795, we said: "As held by us in Heilman v. Reitz, 89 Neb. 422, it is fundamental that heirs will not be disinherited by conjecture, but only by express words or necessary implication, and that the actual disposition of the estate to another person is necessary to deprive the heir of the property of his ancestor. We deem it also fundamental that, in the absence of anything in the will to the contrary, the presumption is that the ancestor intended that his property should go where the law carries it, which is supposed to be the channel of natural descent. To interpret or distract the descent or direct it in a different course should require plain words to that effect."

Are there "plain words" in this will that direct the disposition of this property in a different course?

In Hunter v. Miller, 109 Neb. 219, 190 N. W. 583, we said: "Where there is a doubt as to the distribution of property under a will, the heirs at law will be favored, and, so far as consistent with the terms of the will, or the reasonable inferences to be drawn therefrom, the law of descent will be followed as presumptively in accord with the intention of the testator. * * * A mere negative inference, however, that heirs were not to receive an interest in the estate of the testator is not sufficient to exclude them, unless there is some other actual disposition of that interest found in the will."

Section 30-228, R. S. 1943, provides: "When a devise or any legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, having issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator, unless a different disposition shall be made or directed by the will."

"A testator normally seeks to make equal distribution among those who have equal claims upon his bounty. * * * Consequently the intent commonly prevalent among conveyors justifies the conclusion that, unless a contrary intent of the donor is found from additional language or circumstances, such a donor, either by will or by deed, intends to make such an equal distribution." Hence, there is a " * * * constructional preference for that one of two or more possible constructions which accomplishes such equal distribution." Restatement of the Law, Property, § 243 (f), p. 1214. Is there a contrary intent of the donor found in the additional language of this will which prevents a conclusion that the testator intended an equal distribution?

In a will the word "if" may be construed to mean "when" in order to advance the apparent intent of the testator. 31 C. J., If, note 56(a), p. 238; 2 Williams, Executors (11th ed.), p. 848.

The will, except as to formal parts, indicates a draftsmanship by someone not trained in the drafting of wills. The second sentence in paragraph "FIFTH" apparently assumes a life estate first to the testator's wife in the "land" of the testator, although it is not otherwise expressed in the will. Paragraph "SIXTH" devises a life estate to a daughter-in-law without a remainder over. There is the use of "dowry right" in paragraphs "SECOND" and "THIRD" with reference to the interest of sons-in-law. The failure to use the blanks and the place for testator's signature on the will indicates the use of a form and self-help. Other provisions and language need not be mentioned now.

The parties agree that paragraph "SECOND" devises a life estate in 80 acres of land to a daughter with remainder to a grand daughter. This paragraph shows a desire to protect the life estate and assure its vesting in the granddaughter free from mortgage, and "without a dowry right to her father." The language used is, "at her passing away."

Paragraph "THIRD" devises 80 acres of land to another daughter with a like desire against mortgaging and "without a dowery (sic) right to his (grandson's) father." Here the words are, "if she should pass away." Plaintiffs contend that this provision creates a life estate in the daughter and a remainder to the grandson, basing it upon the restriction against mortgaging and our decisions in Moran v. Moran, 101 Neb. 386, 390, 163 N. W. 315, 1071, and Kluge v. Kluge, 103 Neb. 534, 172 N. W. 756. Defendant argues that by the use of the words "if he should pass away" a fee simple title was devised.

Paragraph "FOURTH", the one in question, uses the words, "if he should pass away." It refers again to 80 acres of land and does not contain a restriction against mortgaging or against dowry rights.

We have here then this picture—a testator who had 240 acres of land, three children and four grandchildren. Clearly, subject to the life estate of his wife, if one was given, he wanted each of his three children to have at least a life estate in one-third of his land. That constituted an equal distribution in acres. Clearly, by paragraph "SECOND" as to Lockie McCully, he not only contemplated that the remainder should go to his named grandchild but protected against encumbrances and any claim of interest by his son-in-law. The same intent is evident in paragraph "THIRD", save as that intent may be clouded by the use of the "if she should pass away," instead of "at her passing away." A like intent is evidenced in paragraph "FOURTH", save as it is clouded by the use of the words, "if he should pass away" and the omission of the expressed desire against mortgaging and dowry right.

To construe this will as plaintiffs contend 'will result in each of the children of the testator receiving an equal share in the estate, and the child, or children, of each child receiving the parent's estate and keeping the estate in the line of descent and in those of testator's blood to the second generation. That clearly was the testator's intent as to paragraph "SECOND" and, in the absence of other directions, justifies the conclusion that he had the same intent of equal distribution as to all his children, and per stirpes to his grandchildren. There is nothing in this will to indicate a contrary intent. This intent of equal division is strengthened by the provisions of paragraph "EIGHTH" where the testator made some adjustments in cash between his children, and divided the residue of his estate equally between them.

To construe this will as the defendant would have us do would be to hold that this testator intended his grandchildren, these plaintiffs, to have a fee simple estate in this land if their father predeceased the testator, and nothing if the father survived the testator. Without doubt, the testator could have so provided, but there is nothing here to indicate an intent to make such an unequal distribution. That intent is negatived by the provisions in the will here discussed.

There are no "plain words" either indicating a purpose to make an unequal distribution or to take this property out of the "channel of natural descent." The channel of natural descent is recognized by statute. Sec. 30-228, R. S. 1943, directs that where a devisee, being a child or other relation of the testator, dies before the testator, his issue, if any survive the testator, take the estate devised to the ancestor "unless a different disposition shall be made or directed by the will."

Plaintiffs argue that if this will is construed as defendant would have us do, then under the provisions of Sec. 30-228, R. S. 1943, all the language in paragraph "FOURTH" be-

ginning with "and if he should pass away" is surplusage and accomplishes nothing; and that it cannot be construed out of the will or ignored, or else we must write into the will the additional words "before my decease." Defendant answers that it cannot be presumed that other children would not be born to Clyde Roberts and therefore he did not dispose of this land precisely as the statute would have disposed of it in the absence of a will. To us that is not an important consideration. The important fact is that this testator knew his children and obviously intended that all should share equally in his lands, and that the named existing grandchildren of each child of his blood should eventually receive the parent's share. To say that this aged testator, unskilled in the technical use of words and expression and in will drafting, as his will indicates, intended by the use of the word "at" in one clause to assure an inheritance to one grandchild, and by the use of "if" in another clause to disinherit conditionally two other grandchildren, is to worship words and to ignore the clear indications of his intentions as to the equal distribution of his estate to those of his blood as found elsewhere in his will. Heretofore we have not applied the extremely technical and prima facie rule upon which the defendant relies, where an intent and purpose otherwise is indicated in the will. We do not do so now.

We hold that the testator used the words, "if he should pass away" with the meaning "when he passes away," and that he used the language with reference to death either prior to or subsequent to his own, creating thereby a life estate in Clyde Roberts and a remainder in these plaintiffs.

The decree of the trial court is reversed and the cause remanded with directions to enter a decree based on the construction of the will that under the clause involved Clyde Roberts was devised a life estate, and the plaintiffs the remainder estate in the land, and that Clyde Roberts,

now being deceased, plaintiffs at his death became vested with the fee simple title to the land.

REVERSED AND REMANDED.

CHAPPELL and WENKE, JJ. dissent.