RUTH NIEMANN ET AL., APPELLEES, v. JOHN T. ZACHARIAS ET AL., APPELLEES, IMPLEADED WITH WILLIS B. ZACHARIAS, APPELLANT.

176 N. W. 2d 671

Filed April 24, 1970. No. 37323.

James F. Begley, for appellant.

Thomas R. Burke and Lyman Larsen of Kennedy, Holland, DeLacy & Svoboda, for appellees Niemann et al.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This action is for a declaratory judgment construing a will and determining the persons entitled to the assets

of the residual estate of Alma Hopkins, deceased. The district court entered a decree that the residue of the estate of Alma Hopkins, deceased, vested in Ruth Niemann and Dean Niemann equally, share and share alike, to be theirs absolutely in fee simple without condition or limitation. The defendant Willis B. Zacharias has appealed. We affirm the judgment of the district court.

The will of Alma Hopkins was dated June 27, 1963. Alma Hopkins died January 30, 1968, and her will was duly admitted to probate. The relevant portions of her will provided: "SECOND, All the rest, residue and remainder of my property, both real and personal, wheresoever situated, including after-acquired property, I hereby give, devise and bequeath to NELLIE HOPKINS of Auburn, Nebraska; LUCY B. HOPKINS, of Auburn, Nebraska; RUTH NIEMANN of Auburn, Nebraska, and DEAN NIEMANN of Auburn, Nebraska, equally, share and share alike, and to their heirs, devisees and legatees as set forth in their Last Wills and Testaments, to be theirs absolutely, in fee simple, without condition or limitation.

"THIRD: I well remember my brother, ALBERT A. FENSKE; my nephew, ALBERT FENSKE Jr.; my niece NAOMI NIEMANN; my niece, GLENIS BEHRENDS, and all of my other heirs and relatives, but on account of the foregoing provisions of this my Last Will and Testament, I give them and each of them nothing hereunder."

Nellie Hopkins, one of the four individuals named in the second paragraph of Alma Hopkins' will, died on March 15, 1966. Her will was dated June 21, 1963. Her will left one-half of her estate to Alma Hopkins and one-half to Lucy B. Hopkins. Final decree was entered September 6, 1969. The parties are in agreement that the share of Alma Hopkins' estate given to Nellie Hopkins by Alma's will lapsed back into the residue upon Nellie's death prior to the death of Alma.

Lucy B. Hopkins, named in paragraph Second of Alma

Hopkins' will, died January 24, 1968, leaving a will which was duly admitted to probate. The will was dated August 14, 1964. Paragraph Tenth of the will of Lucy B. Hopkins provided: "TENTH: All inheritances which I may be entitled to at the date of my death by reason of the provisions of the Last Will and Testament of any person or persons, or over which I have any power of appointment, I hereby declare and designate Willis B. Zacharias, my Nephew, to be my sole heir for the purpose of receiving such inheritance, and if I have any power of appointment, I hereby appoint said legacy or device to the said Willis B. Zacharias, to be his absolutely and forever, without condition or limitation, and to his heirs by right of representation, per stirpes." Willis B. Zacharias was also the residual legatee under the will of Lucy B. Hopkins.

Alma Hopkins, the testatrix, was the widow of Wood Hopkins. Neither Alma nor Wood had any children. Nellie Hopkins was a sister of Wood Hopkins and a sister-in-law of Alma Hopkins. Lucy B. Hopkins was a cousin of Wood Hopkins and a cousin-in-law of Alma Hopkins. Neither Nellie Hopkins nor Lucy B. Hopkins were related to Alma Hopkins by blood. Both Nellie Hopkins and Lucy B. Hopkins were spinsters, and had no children.

Ruth Niemann is a niece of Alma Hopkins, a daughter of Albert Fenske, who is a brother of Alma Hopkins. Ruth Niemann is the only person involved who is related to Alma Hopkins by blood. Albert Fenske has three other children who are not beneficiaries of the estate of Alma Hopkins. Albert Fenske and these three children are the four persons named in paragraph Third of Alma Hopkins' will who received nothing under the will.

Dean Niemann is the husband of Ruth Niemann and thus a nephew-in-law of Alma Hopkins.

Defendant Willis B. Zacharias is a nephew of Lucy B. Hopkins.

The district court found and decreed that the residue of the estate of Alma Hopkins vested in Ruth Niemann and Dean Niemann, equally, share and share alike, to be theirs absolutely in fee simple without condition or limitation.

It is the contention of the defendant Willis B. Zacharias that the language of paragraph Second "and to their heirs, devisees and legatees as set forth in their Last Wills and Testaments" shows a controlling intent or dominate purpose of Alma Hopkins that the gifts were not contingent upon the named persons outliving her, but gave to each of them a power of disposition in the event they died prior to the testatrix. Zacharias contends that the quoted language gave to each of the four named individuals a power of appointment of his or her share or a power of testamentary substitution.

The plaintiffs' position is that the will demonstrates the intent to give the four named beneficiaries fee simple title to her estate without condition or limitation, and that since Nellie Hopkins and Lucy B. Hopkins predeceased Alma Hopkins, their fee simple interest therefore lapsed into the residue and goes to Ruth and Dean Niemann.

The parties concede that in construing the will of Alma Hopkins, the intent of the testatrix governs so far as such intent can be collected from the whole instrument, and insofar as such intent is not inconsistent with substantive rules of law.

Where a patent ambiguity in a will is involved, and the search for intent is limited to "the four corners of the will," the difficulty is apparent. Any effort to ascertain the "true intent" of a testator necessitates not only interpreting ambiguous or even contradictory language, but weighing and balancing varying and sometimes conflicting legal rules, principles, and presumptions.

Where a devisee or legatee dies before the testator, in the absence of statute, or of other provisions in the will which show that the testator intended the gift to go

to some other designated person in case the beneficiary died before the testator, the gift lapses. See 6 Page on Wills, § 50.2, p. 62. The Nebraska antilapse statute, section 30-228.03, R. R. S. 1943, does not apply, and the basic common-law rule is in effect.

Whenever the same person acquires a fee simple estate and a lesser estate in the same property, the lesser estate is destroyed by or merged in the fee simple estate. See Watson v. Dalton, on rehearing, 146 Neb. 86, 20 N. W. 2d 610.

In Grant v. Hover, 103 Neb. 730, 174 N. W. 317, this court said: "It has been regarded by the courts that it is impossible to convey an absolute title to real estate in fee simple by deed or will, and at the same time in the same instrument convey to the same person a limited right or title in the same land."

The same principles apply to a power of appointment. "* * * the modern American view is that one cannot be the owner of an interest in property and also the donee of a power to appoint that interest. In other words, there can be no such thing as a power appendant." Simes and Smith, The Law of Future Interests, § 1060, p. 528. See, also, 72 C. J. S., Powers, §§ 17 and 18, p. 410; In re Estate of McCurdy, 197 Cal. 276, 240 P. 498; In re Cardon's Trust, 352 Pa. 23, 42 A. 2d 56.

A testator can prevent the lapse of a legacy by providing for the substitution of another beneficiary in case the original beneficiary predeceases the testator. Here again, the problem is the intention of the testator. See, 57 Am. Jur., Wills, §§ 1428, 1429, pp. 958 and 959; Thompson on Wills (3d Ed.), § 493, p. 714.

The particular words which give rise to the problem here are: "and to their heirs, devisees and legatees as set forth in their Last Wills and Testaments." This language is preceded by the language giving all the residue of the testatrix' property to the four named individuals "equally, share and share alike" and is followed

by the words: "to be theirs absolutely, in fee simple, without condition or limitation."

The issue here is whether the testatrix intended the critical language to be words of limitation or words of substitution. Generally speaking, where words such as "heirs," "estate," "representatives," "executors," or "administrators" have been used following the name of a specific beneficiary, the word "and" has ordinarily carried the connotation that the words are words of limitation rather than of substitution. The use of the word "or" in such an instance has often been construed as indicating words of substitution. See, 96 C. J. S., Wills, § 739, p. 135; Annotation, "Wills—'or his estate'—lapse," 11 A. L. R. 2d 1387. See, also, Justice Traynor's opinion, In re Estate of Brunet, 34 Cal. 2d 105, 207 P. 2d 567, 11 A. L. R. 2d 1382, as to the words "or his estate."

Had the language here stopped with the words "and to their heirs, devisees and legatees" we think there would be little question but that the words would be words of limitation rather than words of substitution. It would seem only logical that the addition of the words "as set forth in their Last Wills and Testaments" merely narrows the limitation rather than broadening it. The language, in whole or in part, is still basically language of limitation rather than language of substitution.

It must be noted too that paragraph Third of the will of Alma Hopkins stated her specific intent that the relatives named in that paragraph, and all of her "other heirs and relatives," should take nothing under her will. This language supports the trial court's finding that it was the intent of the testatrix to benefit only those persons named in paragraph Second of her will and inferentially supports the conclusion that the critical language in paragraph Second was not intended as substitutional.

The language of paragraph Second of Alma Hopkins'

will expresses a clear intent to leave her estate to the four individuals named "to be theirs absolutely, in fee simple, without condition or limitation." That being true, no power of appointment or substitution ever came into existence which could be exercised by any of the named individuals if they predeceased her, nor is there any indication that the testatrix ever intended the four named beneficiaries to receive less than a fee simple estate.

A will speaks only from the date of the testator's death. Neither an absolute fee simple interest nor a power of appointment or substitution could come into existence until the death of Alma Hopkins. If any of the four named beneficiaries predeceased Alma Hopkins, any interest they might have had in her estate never came into existence. If Nellie Hopkins' interest in the estate of Alma Hopkins lapsed upon Nellie's death prior to that of Alma, as the trial court found, and as both parties concede, Lucy B. Hopkins' position and interest cannot be logically distinguished. Both Nellie and Lucy left valid wills and heirs, devisees, and legatees under those wills. The fact that the will of Lucy B. Hopkins contained a clause specifically disposing of inheritances and powers of appointment generally while Nellie's will did not is immaterial. We are dealing here with the language in the will of Alma Hopkins, not the language in the wills of Nellie Hopkins or Lucy B. Hopkins.

The rule that wills should be construed so as to avoid the passing of property by intestacy does not apply here. The trial court was correct in determining that the intent of the testatrix was to benefit only those persons named in paragraph Second of her will; that no life estates were intended; that the testatrix intended to vest in the named individuals an absolute fee simple title without condition or limitation; and that upon the death of any of the four named individuals prior to the testatrix, the interest of that individual lapsed.

The judgment of the trial court was correct and is affirmed.

AFFIRMED.

SPENCER, J., dissenting

In my opinion, the majority opinion herein rather than construing the will of Alma Hopkins emasculates it by in effect striking the last portion of the second paragraph. This we cannot do. It is our duty to ascertain a testator's intent and to give effect to that intent if it can legally be done. To do this, we must try to give effect to every part and portion of the will. We said in Elrod v. Heirs, Devisees, etc., 156 Neb. 269, 55 N. W. 2d 673: "Each word and provision of the conveyance must be given such significance as will make effective the intention of the parties."

We have had a statute on the construction of conveyances since 1866. Section 76-205, R. R. S. 1943, provides: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true intent of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law." This statute is applicable to the construction of wills. In re Estate of Zimmerman, 122 Neb. 812, 241 N. W. 553.

As early as 1899, the law on the subject of will construction was well settled. In Weller v. Noffsinger, 57 Neb. 455, 77 N. W. 1075, this court enunciated the rules by which courts should ascertain and give effect to the intention of the testator, in the following language: "No rule of law is better settled, or more in accord with good sense, than that which requires the intention of the testator to be ascertained from a liberal interpretation and comprehensive view of all the provisions of the will. No particular words, no conventional forms of expression, are necessary to enable one to make an effective testamentary disposition of his property. The court,

without much regard to canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it."

The language in question herein is as follows: "SECOND: All the rest, residue and remainder of my property, both real and personal, wheresoever situated, including after-acquired property, I hereby give, devise and bequeath to NELLIE HOPKINS of Auburn, Nebraska; LUCY B. HOPKINS, of Auburn, Nebraska; RUTH NIEMANN of Auburn, Nebraska, and DEAN NIEMANN of Auburn, Nebraska, equally, share and share alike, *and to their heirs, devisees and legatees as set forth in their Last Wills and Testaments*, to be theirs absolutely, in fee simple, without condition or limitation." (Italics supplied.) It seems to me apparent that it was the intention of the testator to give the property equally to the four persons designated, but that in the event any of them predeceased her that person's portion, if so provided by the deceased's will, should pass to the heirs, devisees, and legatees specifically designated in that will. In other words, testator was attempting to divide her property equally between the four persons designated, only one of whom was related to her by blood, or their successors in interest if any of the four being deceased should so direct in a last will and testament. This is the only possible construction which gives effect or meaning to the words used.

It is axiomatic that a will speaks only from the time of the death of the testator. A person has no devisees or legatees until his will is admitted to probate after his death. The testator herein was attempting to maintain equality and to prevent lapsing if any of the four beneficiaries predeceased her, and she gave them the right to designate who should have that individual's share in her property in the event such contingency occurred.

We cannot overlook the following language from the fourth paragraph in construing this will: "As I am

aware of the ruinous consequences of litigation concerning the probate of Wills, if any devisee, legatee or beneficiary under this, my Last Will and Testament, *or any person claiming under or through any devisee, legatee or beneficiary, * * *."* (Italics supplied.) This part could only be effective if the devisees or legatees are substituted for those of the four beneficiaries who predeceased the testator. This indicates to me that the testator contemplated the possibility that one or more of the four beneficiaries might predecease her, and that person would exercise the right to designate a successor in his or her last will and testament. No one would be claiming under or through a devisee, legatee, or beneficiary unless one of the four had predeceased her.

In this instance, only one of the four was a blood relative of the deceased and could conceivably be within the provisions of the antilapse statute, section 30-228.03, R. R. S. 1943. As to the others, without some specific provision the gift would lapse because the contingency testator was seeking to cover what actually happened. Lucy B. Hopkins, one of the four, predeceased the testator, but she availed herself of the privilege of providing in her own last will and testament for the descent of the property testator intended her to have by the following provision: "TENTH: All inheritances which I may be entitled to at the date of my death by reason of the provisions of the Last Will and Testament of any person or persons, or over which I have any power of appointment, I hereby declare and designate Willis B. Zacharias, my Nephew, to be my sole heir for the purpose of receiving such inheritance, and if I have any power of appointment, I hereby appoint said legacy or device (devise) to the said Willis B. Zacharias, to be his absolutely and forever, without condition or limitation, and to his heirs by right of representation, per stirpes."

Another indication of the intention of the testator herein is the fact that in the third paragraph of her will

she expressly excludes every other person than those specifically covered in the second paragraph. She does this by mentioning near relatives by name and including the others as "and all of my other heirs and relatives, * * *."

A patent ambiguity in a will, if this may be considered such, must be resolved by interpretation of the intention of the testator as found within the four corners of the will. Gaughen v. Gaughen, 172 Neb. 740, 112 N. W. 2d 285.

The majority opinion is confusing the issue here by talking about the beneficiaries acquiring a fee simple estate and a lesser estate in the same property, the lesser estate in this instance being a power of appointment, or, more accurately, a power appendant on the theory of the opinion. There is a power of appointment but definitely no power appendant herein because, as suggested heretofore, no interest of any nature is acquired until the death of the testator. The devisees received a fee simple estate if they survived the testator, but until the will became effective by the death of the testator, they had only the right to cover the contingency of their own prior death. What the testator in this instance was trying to do was to permit her devisees and legatees to provide substitute devisees and legatees in case of their death. It is clear that testator did not intend that the gift to Lucy Hopkins or the others be dependent upon their surviving her, so she gave them a testamentary power of disposition by the words which the majority opinion herein ignores. She left it entirely to those named to exercise this right *if they desired.* It is very evident that Alma Hopkins was familiar with the terms of the last will and testament of the testator and desired to avail herself of the right of providing who should receive the interest she would receive if she survived the testator. The antilapse statute would not apply because Lucy Hopkins was not related to the deceased, so some other method was neces-

sary. The method employed herein, as I construe it, would prevent lapse and was undoubtedly intended to do so.

As stated in 57 Am. Jur., Wills, § 1429, p. 959: "There is no doubt that a testator can prevent the lapse of a legacy by providing for the substitution of another beneficiary in case the original beneficiary predeceases the testator."

In Schnitter v. McManaman, 85 Neb. 337, 123 N. W. 299, this court said: "A devise to one in fee, and in the event of his death to another in fee, refers to death during the testator's life, because the event cannot be said to be contingent, and it seems more compatible with reason to say that the testator by the use of the words was providing a substitute for the first taker should that devisee not survive the testator."

Referring to the italicized portion of the second paragraph of testator's will set out heretofore, if the word "and" were read as "or," there would be absolutely nothing for construction herein. In this respect I call attention to the case of Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N. W. 2d 409, in which we said: "The laxity in the use of the conjunctive 'and' and the disjunctive 'or' is so frequent that the doctrine has been accepted that they are interchangeable and that one may be substituted for the other if to do so is necessary to give effect to any part of a statute or to effectuate the intention of the Legislature. State ex rel. City of Grand Island v. Union P. R. R. Co., 152 Neb. 772, 42 N. W. 2d 867; Carlsen v. State, 127 Neb. 11, 254 N. W. 744."

In Roberts v. Roberts, 147 Neb. 494, 23 N. W. 2d 774, this court in effect held that the intent of the testator would control rather than technical language used in a particular clause of a will, and specifically held the word "if" could be construed to mean "when" in order to advance the apparent intent of the testator. Here it is obvious that there could not be the slightest question if the word "and" were construed to mean "or," al-

though I do not think we need to do so. I believe the intent of the testator is clear.

WHITE, C. J., concurring.

The single issue involved is the construction of the language used in the devise and bequest to four named individuals, two of whom predeceased the testator, "equally, share and share alike, and to their heirs, devisees and legatees as set forth in their Last Wills and Testaments, to be theirs absolutely, in fee simple, *without condition or limitation.*" (Emphasis supplied.)

While concurring with the majority opinion which holds that the interests of the two who predeceased the testator lapsed into the residuary estate, I feel that the proper rationale controls a finding that the above devise is of a fee simple absolute. To the extent, if at all, that the phrase "and to their heirs, devisees and legatees as set forth in their Last Wills and Testaments" can be considered as creating a power of appointment, it is repugnant to the base fee and must fail. Grant v. Hover, 103 Neb. 730, 174 N. W. 317; State Bank of Jansen v. Thiessen, 137 Neb. 426, 289 N. W. 791; Watson v. Dalton, 146 Neb. 86, 20 N. W. 2d 610; Andrews v. Hall, 156 Neb. 817, 58 N. W. 2d 201, 42 A. L. R. 2d 1239.

The compelling consideration in construing the devise as a fee simple absolute is the manifestation of the testator's intent and the last portion of the phrase, to-wit: "to be theirs absolutely, in fee simple, *without condition or limitation.*" (Emphasis supplied.)

The dissent focuses upon the language used in the noncontestability clause of paragraph fourth: "* * * if any devisee, legatee, or beneficiary under this, my Last Will and Testament, or *any person claiming under or through any devisee, legatee or beneficiary * * *.*" (Emphasis supplied.)

This language, it is argued, may only be effective if there is a substitution of the devisees or legatees for the four named beneficiaries who may have predeceased the testator. Thus, it is argued, the testator must have in-

tended that a power of appointment be created in the four named beneficiaries. It seems obvious, however, that this clause in the fourth paragraph is mere boilerplate, and that it should not be construed as evidencing an intent to create a power of appointment. Had the testator intended to create such a power in the four named beneficiaries, she could have done so in specific terms. To argue that she has created a power by extrapolating from the language of the noncontestability clause seems anomalous at best. In order to establish such a power, as this case has shown, it is necessary to construe language which, as appellees concede, is patently ambiguous in this regard in the second paragraph. This is directly contrary to the purpose of the noncontestability clause itself. It seems quite clear that the testator would not have been so meticulously subtle with respect to the noncontestability clause, yet so brazenly unsophisticated with respect to the dispositive provision of her will. Additonally, it seems clear that because of the specificity used by the testator in determining who was going to share in her estate, there was no intent to create a power of appointment, especially since it may be created only by the use of clear and unambiguous language. For these reasons, I concur in the result of the majority opinion.

CARTER, J., concurring in result only.

I am not in accord with the holding of the majority opinion. It assumes that the power of appointment would have been valid but for the ambiguities in the language purporting to create it. In my opinion, the power of appointment lapsed whether or not the language of the will purporting to create it was sufficient.

The donee of the power of appointment died prior to the death of the donor. "The usual rules which apply to the lapse of legacies given by a will apply with full force to wills executing powers of appointment, so that where an appointment is made by will in favor of one who predeceases the testator the appointment lapses."

41 Am. Jur., Powers, § 75, p. 860. See, also, 96 C. J. S., Wills, § 1070c, p. 726; 72 C. J. S., Powers, § 37, p. 434; Restatement, Property, § 348, p. 1936; Brown v. Fidelity Union Trust Co., 126 N. J. Eq. 406, 9 A. 2d 311; Burruss v. Nelson's Ex'r., 132 Va. 17, 110 S. E. 254; French v. Heywood, 214 Mass. 582, 102 N. E. 271; In re Cardon's Trust, 352 Pa. 23, 42 A. 2d 56; In re Estate of McCurdy, 197 Cal. 276, 240 P. 498.

Since the power of appointment lapsed, the power itself never came into existence. Applying this rule, the judgment of the trial court was correct in holding that the share of Lucy B. Hopkins vested in Ruth and Dean Niemann.

NEWTON, J., concurs in the foregoing concurrence.