Hunter v. Miller.

MARY L. HUNTER, APPELLEE, V. SAMUEL MILLER ET AL., APPELLANTS.

FILED NOVEMBER 13, 1922.   No. 22106.

1. **Wills:** DEVISE BY IMPLICATION. A devise by implication must so clearly result from the express wording of the will that an intention to the contrary cannot be supposed.

2. ———: PRESUMPTIONS. The presumption that a testator intended to fully cover the disposition of his estate by his will will not overcome the rule requiring express provision, or necessary implication, to disinherit an heir.

3. ———: CONSTRUCTION: INTENT. It is the intention which the testator expresses in his will, either by its terms or. by necessary implication, that controls, and not merely what the testator may have had in his mind, nor what the court may believe he would have done had he completed what appears to be an incomplete disposition of his property.

4. ———: ———: IMPLIED REMAINDER. Where a will provided a life estate to testator's daughter Mary and, should she die without issue surviving her, to Rebecca, another daughter, but made no express disposition of the property after Mary's death in case she should leave issue surviving her, *held*, that, in view of all the provisions of the will, there was no implied remainder in favor of the issue of Mary, should they survive her.

5. ———: ———. As to any disposition of the remaining interest in the property, subject to the life estate of Mary, in event Mary should die leaving issue, *held* the testator died intestate, and that the title to the property, subject to the life estate of Mary and the right to a contingent remainder in Rebecca, vested in the heirs at law.

6. ———: ———: ISSUE. *Held,* that the term "issue" of Mary, as used in the will, was not used in any restricted sense, nor intended to refer to the one child of Mary, only, who was expressly named in the will, but to other children or descendants of Mary, in view of the fact that Mary had several children at the time of the execution of the will, and there being nothing from the terms of the will which would indicate that the testator used the term in any peculiar sense.

APPEAL from the district court for Wayne county: WILLIAM V. ALLEN, JUDGE. *Reversed and dismissed.*

*C. H. Hendrickson*, for appellants.

*A. R. Davis* and *M. O. Cunningham*, contra.

Heard before MORRISSEY, C. J., ALDRICH, DAY and FLANSBURG, JJ., REDICK and SHEPHERD, District Judges.

FLANSBURG, J.

This was an action to quiet title. The property involved constitutes a part of the estate of George Scott, deceased. Plaintiff, a daughter of George Scott, was, by the will, given a life estate in the property. She bases her claim to a fee-simple interest in the property in part upon this devise of a life estate to her, but especially upon certain quitclaim deeds, made to her by the parties who, she claims, were the devisees of the remainder of the estate after the carving out of her life estate. The defendants are the heirs of the said George Scott other than those who are grantors in the deeds mentioned, and their contention is that George Scott made no disposition of the remainder in the property after the devise of a life estate to plaintiff, and, therefore, as to such remainder, died intestate. The trial court found in favor of the plaintiff and quieted title in her. From this decree defendants appeal.

George Scott, a resident of Wayne county, died in 1894, owning the real estate in controversy, and left surviving him as his heirs seven children and the children of his deceased daughter, Annie Scott Miller. Mary L. Hunter, the plaintiff in this case, was one of the daughters of the deceased, and has several living children. Her oldest son was Scott Hunter. Rebecca Hunter was another daughter of the deceased.

The provisions of the will, so far as here involved, are as follows: "I give and devise unto my beloved daughter, Mary, the following described tract of land situated in said county of Wayne, to wit: The north half of the southwest quarter, and the southeast quarter of the southwest quarter of section twenty-seven (27) in town

ship twenty-six (26) of range four (4) east, during her life, and I give and bequeath unto my said daughter Mary all my personal estate of every description whatsoever, except as herein otherwise provided."

Then there follows a number of specific bequests, in the amount of $5, to each of the respective children of the deceased other than Mary L. Hunter. Among these bequests was one to Annie Scott Miller, a daughter of the testator, who was living at the time of the execution of the will, but deceased at the time of the death of the testator.

Then follows this provision: "Upon the death of my beloved daughter Mary, or upon my own death in case I survive her, I give and devise the tract of land above described and devised to her, unto her oldest son Scott Hunter in case she dies leaving said son, and the personal property to be divided equally among the remaining issue subject to above legacies, but in case my said daughter Mary should die without issue surviving her, then I bequeath said property above mentioned real and personal to my beloved daughter Rebecca, the same to be subject to the legacies above mentioned."

Shortly after the decease of George Scott, the plaintiff's oldest son, Scott Hunter, died, leaving no issue. The provision limiting a remainder to Scott Hunter has, therefore, become inoperative, for that interest was conveyed only in case Scott Hunter should survive the plaintiff, Mary L. Hunter.

It has been suggested that in the phrase, should Mary "die without issue surviving her," the testator used the word "issue" as referring to Scott Hunter, and, as Scott Hunter had not survived Mary, Rebecca would, upon the plaintiff's death, take the remainder. The term "issue" in its general sense, however, would refer to all the children or descendants of Mary, and not to one specific child, unless, at least, there was something in the will which unequivocally showed that the testator was using

the term in that sense. Since at the time of the execution of the will Mary had several children then living, Scott Hunter being the eldest, it would be unreasonable to assume that the testator, in using the term "issue" of Mary, intended to refer only to Scott Hunter, and not to the other children.

It is the claim of plaintiff, Mary L. Hunter, that, by the provisions of the will, she received a life estate with a vested remainder, by implication, in her children, to be enjoyed by them should they survive her, but, in event she should die without issue, that a contingent remainder should vest in Rebecca Hunter.

Prior to the commencement of this suit Rebecca Hunter and each one of the plaintiff's children made quitclaim deeds to the plaintiff of whatsoever interest they might have in the property in controversy, and it is plaintiff's contention that, by the deeds from these alleged remaindermen, she has become vested with a fee-simple title. The heirs of George Scott, other than Rebecca and the children of Mary, claim that the testator has made no disposition, beyond the life estate of Mary, in event that Mary should die leaving issue surviving her, but that in such event the testator has, to the extent of any interest in remainder in the property, died intestate.

The whole case hinges, therefore, upon the question of whether there is a limitation, after the death of Mary, of a remainder in the property to her issue, should she die leaving issue surviving her. There is no such express provision in the will. The devise of such an estate in remainder, if such a devise can be found, must rest entirely upon implication.

In order that a devise by implication can be found to have been made to the children of Mary, to the exclusion of the children and heirs of the testator, the implication must be found to be so strong a probability that an intention to the contrary cannot be supposed. Where there is a doubt as to the distribution of property under a

will, the heirs at law will be favored, and, so far as consistent with the terms of the will, or the reasonable inferences to be drawn therefrom, the law of descent will be followed as presumptively in accord with the intention of the testator. *Heilman v. Reitz,* 89 Neb. 422; 40 Cyc. 1412; 28 R. C. L. 229, sec. 190.

It is argued that the testator has, by his will, given to each of his own children a legacy of $5, and that this signifies an intent on his part that they were to be limited, in what they should receive from his estate, to those specific bequests. But it might as well be argued that Mary's children were, on the other hand, given all the personal property of deceased on the death of Mary, and that, therefore, this indicates that the testator intended that they should not receive more.

A mere negative inference, however, that heirs were not to receive an interest in the estate of the testator is not sufficient to exclude them, unless there is some other actual disposition of that interest found in the will. *Herter v. Herter,* 97 Neb. 260.

It is further argued that the testator has manifested an especial interest in the issue of Mary by his repeated mention of them and by the provision in the will to the effect that at the death of Mary all the personal property should be divided among them; that it was also, no doubt, the testator's intention that the real estate should be distributed in the same manner. Such a conclusion is not a necessary one. By the provisions of the will, so far as it affects the property in question, an entirely different disposition is made than as to the personal property. It is not necessary to presume that the testator intended that the real estate, except as to the express limitations made, should descend in the same manner as his personal estate.

Since it was only in event that Mary had no issue surviving at her death that the testator provided that Rebecca should take, the query arises: Is there not such

significance in that fact as to show that the testator in-
tended some disposition to the surviving issue of Mary.
or why would the testator make the disposition over to
Rebecca dependent upon the particular event only. that
Mary should leave no issue? It is easy to conjecture that
it may have been the testator's intention to make pro-
vision for a remainder to the issue of Mary which,
through some oversight, he failed to express in his will.
But it is certain that he did not express it. It is true
that the limitation in remainder to Rebecca was not to
take place except in the event that Mary should die with-
out issue, and, in case she should die leaving issue, the
testator no doubt intended to make some other disposi-
tion of the remaining interest in the property, but just
what that disposition was to be, we are left to conjecture.

Who can say what disposition he intended to make?
Having in mind that he had given all his personal prop-
erty to the children of Mary, when he should come to
the final disposition of his real estate, though it might be
that he intended to give Mary's issue an interest therein,
how can we say that he would not, in its disposition,
have taken into consideration, and been, at least to some
degree, guided by, the gifts previously made in his will
and have sought to equalize the inheritance.

The question, however, is not what would the testator
have done, but what did he do, and has the will, which
he executed, by its terms expressly given or raised, by
necessary implication, a devise of the property to the
issue of Mary.

As said in *Wright v. Denn,* 10 Wheat. (U. S.) 204, 228:
"It is not sufficient that the court may entertain a pri-
vate belief that the testator intended a fee; it must see
that he has expressed that intention with reasonable cer-
tainty on the face of his will. For the law will not suffer
the heir to be disinherited upon conjecture. He is favored
by its policy; and though the testator may disinherit
him, yet the law will execute that intention only when

it is put in a clear and unambiguous shape. * * * (p 239) We may indulge conjectures; but the law does not decide upon conjectures, but upon plain, reasonable, and certain expressions of intention found on the face of the will. * * * (p. 245) The testator may have intended it, and probably did, but the intention cannot be extracted from his words with reasonable certainty, and we have no right to indulge ourselves in mere private conjectures."

It is further true that there is a presumption that the testator intended to devise all of his property, and did not intend to die intestate as to any part of it, but that presumption is not stronger than the other presumption, which is, that a testator will not be held to have disinherited an heir except where that conclusion is impelled by the express provisions or by necessary implication from provisions specifically set forth. *Watson v. Martin,* 228 Pa. St. 248.

As to what shall be done with the property in the event of Mary's death without issue surviving her, except as to such uncertain inferences as may be drawn from the matters pointed out above, it must be admitted, the will itself is utterly and entirely silent. The children of the deceased, heirs of his estate, cannot be disinherited by conjecture. What the testator intended to do with his property, in case Mary should be survived by her children, is only a matter of speculation. Nothing in the will impels to the idea that they, to the exclusion of the others, were given a remainder in the property.

We are of opinion that Mary L. Hunter took a life estate and that the heirs of George Scott took a vested remainder, subject, however, to be divested in the event that Mary should die without issue, in which case the contingent remainder would become vested in Rebecca.

For the reasons given, the judgment of the trial court is reversed and the action dismissed.

REVERSED AND DISMISSED.