MILDRED JACOBSEN ET AL., APPELLANTS, V. STELLA FARNHAM ET AL., APPELLEES.

53 N. W. 2d 917

Filed June 6, 1952. No. 33149.

*Mathews, Kelley, Fitzgerald, Mathews & Delehant,* and *McGinn & McGinn,* for appellants.

*Collins & Collins,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs, as legatees and claimed devisees named in paragraph second of the last will and testament of Nettie C. Griffin, deceased, brought this action against defendants, heirs at law of deceased and others interested in her estate, to quiet title in plaintiffs to Lot 7 in Butterfield's Subdivision in the northeast quarter of the northeast quarter of Section 10, in Township 13 North, Range 13 East of the 6th P. M., in Sarpy County, Nebraska.

The primary issue involved in the trial court was construction of the will to determine whether such real estate owned by decedent at the time of her death was thereby devised to plaintiffs as claimed by them, or whether it bequeathed only personal property to plaintiffs and the real estate descended to her heirs at law under the intestate laws of this state, as claimed by defendants. The trial court, after hearing upon the merits, construed the will, finding and adjudging that the will bequeathed only decedent's personal property to plaintiffs, and that the real estate descended as intestate property to certain named persons who, as stipulated by the parties, were the sole heirs at law of testatrix at the time of her death.

Plaintiffs' motion for new trial was overruled and they appealed, assigning that the judgment was not sustained by the evidence, but was contrary thereto and contrary to law. We conclude that the assignments should not be sustained.

The pertinent facts are not in dispute. They are as follows: The will was executed by testatrix on February 23, 1949. It was prepared on a "Short Will" printed form by a former grocer then engaged in the

insurance business and unauthorized to practice law, who also acted as one of the witnesses. Testatrix died on June 19, 1949, and the will was subsequently duly probated. Her sole surviving heirs at law were James P. Smith, Stella Farnham, Viola Cozad, Mildred Jacobsen, Nora Hammerstrom, Morris Smith, and Floyd Smith. James P. Smith and Stella Farnham were subsequently deceased. Mildred Jacobsen is the only plaintiff here who was an heir at law of testatrix.

At the time of her death testatrix owned the real property here involved. It was her home in Fort Crook, Nebraska. Its value is not shown but there is evidence that she had lived in such property since at least 1906. She also owned the household goods and furniture therein; a balance of money due on a contract for sale of another parcel of real estate, deed to which had been placed in escrow pending settlement which has since been completed; and an unspecified amount of money allegedly on deposit in a bank but subsequently withdrawn and not yet accounted for by a former discharged administrator with the will annexed. An application citing such prior administrator to account therefor has not yet been adjudicated. The household goods and furniture were sold and together with money otherwise collected, the present administrator with the will annexed had in excess of $1,000 in his hands at time of trial.

Insofar as important here, the second provision of the will provides: "SECOND, After the payment of such funeral expenses and debts, I give, devise, and bequeath To my beloved Niece Mildred Jacobson, My beloved Nephew Earl Rodman and my boloved (beloved) Great Nephew Robert E. Bergstrum *all of my worldly posessions* (possessions) *both personal and moneys which I now have may die posessed* (possessed) *of or may be entitled to.* They to each share equally and share alike." (Italics supplied). There was no residuary clause.

The words "SECOND, After the payment of such funeral expenses and debts, I give, devise, and bequeath"

were a part of the printed form and the rest of the paragraph was a typewritten expression of testatrix. The persons named in the will are plaintiffs in this action. They argued that, in the light of the language used and the alleged presumption that testatrix intended to dispose of her entire estate, the will should be construed as not only bequeathing all of decedent's personal property to them but also as devising all of her real property to them. We conclude otherwise.

As stated in Hahn v. Verret, 143 Neb. 820, 11 N. W. 2d 551, citing cases from this jurisdiction: "We are also committed to the view that in actions to quiet title, * * * and to enforce legacies, * * * the district court has jurisdiction to construe a will in determining the rights of the parties to the land or legacy under the will."

In Dumond v. Dumond, *ante* p. 204, 51 N. W. 2d 374, this court said: "In construing a will a court is required to give effect to the true intent of the testator insofar as it can be collected from the whole instrument, if such intent is consistent with applicable rules of law. Bodeman v. Cary, 152 Neb. 506, 41 N. W. 2d 797; Dennis v. Omaha National Bank, 153 Neb. 865, 46 N. W. 2d 606. Extrinsic evidence is not admissible to determine the intent of the testator as expressed in his will unless there is a latent ambiguity. Borah v. Lincoln Hospital Assn., 153 Neb. 846, 46 N. W. 2d 166. Such evidence is not admissible to determine the intent of the testator where the ambiguity is patent and not latent. In re Estate of Pfost, 139 Neb. 784, 298 N. W. 739. A patent ambiguity is one which appears upon the face of the instrument. It must be removed by construction according to settled legal principles and not by evidence, and the intention of the testator is to be determined from the four corners of the will itself. The controverted provision of the will in the case here presented is one appearing upon the face of the instrument and is there-

fore a patent ambiguity." Such statement is applicable and controlling here.

Also, as held in Olson v. Lisco, 149 Neb. 314, 30 N. W. 2d 910: "In determining a testator's intention, the court must examine a will in its entirety, giving consideration to its every provision, giving words used their commonly and generally accepted meaning, and indulge the presumption that testator understood the meaning of the words used." See, also, Brandeis v. Brandeis, 150 Neb. 222, 34 N. W. 2d 159; and Roberts v. Roberts, 147 Neb. 494, 23 N. W. 2d 774, wherein it was held that: "Where in a will there is a patent ambiguity resulting from the use of words, and nothing appears within its four corners to resolve or clarify the ambiguity, the words must be given their generally accepted literal and grammatical meaning."

It will be noted that the word "devise" appears in the will as a part of the printed form. In that regard, this court, applying section 25-1216, R. R. S. 1943, held in Mack Investment Co. v. Dominy, 140 Neb. 709, 1 N. W. 2d 295: " 'When an instrument consists partly of written and partly of printed form, the former controls the latter, where the two are inconsistent.' * * * Typewriting is writing within the contemplation of the statute, providing that, when an instrument consists partly of written and partly of printed form, the written controls the printed form, where the two are inconsistent." Therefore, the typewritten part, with which "devise" is apparently inconsistent, will control in construing the will. In any event, as stated in Black's Law Dictionary (3d ed.), p. 573, citing numerous cases: "The term 'devise' is properly restricted to real property, and is not applicable to testamentary dispositions of personal property, which are properly called 'bequests' or 'legacies.' But this distinction will not be allowed in law to defeat the purpose of a testator; and all of these terms may be construed interchangeably or applied indifferently to either real or personal property, if the context

shows that such was the intention of the testator."

We are concerned then with the construction of "all of my worldly posessions (possessions) both personal and moneys which I now have may die posessed (possessed) of or may be entitled to."

As stated in 57 Am. Jur., Wills, § 1338, p. 887: "The word 'possessions' may include real estate if so intended, although this is not its technical meaning." In 2 Schouler on Wills (6th ed.), § 1126, p. 1284, it is said: "Where one gives his 'possessions' by will, the word seems applicable prima facie to both real and personal property, as it certainly is where associated words and the context imply such an intention. But the word 'possessions' is seldom used by a professional draftsman; and whenever used, its scope must yield to the testator's probable meaning, * * *." In 33 Words and Phrases, p. 108, it is said: "That the words 'property, possessions, or estates' are sufficient if not qualified to carry real estate, is well settled by many decisions, but it is otherwise if it appears from the context that personal estate only was in contemplation of the parties."

In 72 C. J. S., Possession, p. 234, it is said: "The word 'possession' is also defined as meaning the thing possessed; that which anyone occupies, owns, or controls; and in this sense, as applied to the thing possessed, the word is frequently employed in the plural, denoting property in the aggregate; wealth; and it may include real estate where such is the intention, although this is not the technical signification."

As stated in 49 C. J., Possession, § 7, p. 1096: "As applied to the thing possessed, usually in the plural, the word is used in some of the books in the sense of property, and may, no doubt, include real estate if so intended, although such would not be its technical signification, in its primary meaning a possession being a hereditament or chattel." See, also, Black's Law Dictionary (3d ed.), p. 1383.

In Blaisdell v. Hight, 69 Me. 306, 31 Am. R. 278, a

leading case, it is said: "The word 'possessions' may, no doubt, include real estate, if so intended, though such would not be its technical signification. Bouvier so declares in his law dictionary. The words 'all I may die possessed of,' may include real estate * * * or may not * * * just according to the context with which the words are associated. * * * Had the testator intended to include real estate in the word 'possessions,' it strikes us forcibly that he would not have used the prefix 'personal' at all, * * *. The word 'personal' was manifestly used to qualify and describe both estate and possessions. Accomplished draughtsmen often use words somewhat tautologically in the effort to embrace every description of personal estate."

As stated in 1 Underhill, Law of Wills, §·308, p. 414: "The testator's personal property will include all his property of which he has absolute control, other than real estate, and of which he has power to dispose. * * * This is the primary sense of the words which they have in a will, unless it is clearly apparent that the testator used them in a restricted sense."

In Farish v. Cook, 78 Mo. 212, 47 Am. R. 107, the court held: "It is a natural presumption that a testator, in making his will, intended to dispose of his whole estate and not to die intestate as to any part of it, and in construing doubtful expressions this presumption ought to have weight, but it cannot supply the actual intent of the testator to be derived from the language of the will. When the clause to be construed cannot be connected with some other part of the will disclosing such intent, it cannot prevail, nor even where the intent is disclosed, in the absence of language sufficient to carry everything." See, also, Allison v. Hitchcock, 309 Mo. 488, 274 S. W. 798; Goodrich v. Bonham, 142 Neb. 489, 6 N. W. 2d 788.

Also, as stated in Hunter v. Miller, 109 Neb. 219, 190 N. W. 583: "It is further true that there is a presumption that the testator intended to devise all of his prop-

erty, and did not intend to die intestate as to any part of it, but that presumption is not stronger than the other presumption, which is, that a testator will not be held to have disinherited an heir except where that conclusion is impelled by the express provisions or by necessary implication from provisions specifically set forth. Watson v. Martin, 228 Pa. St. 248." Therein the court specifically held: "The presumption that a testator intended to fully cover the disposition of his estate by his will will not overcome the rule requiring express provision, or necessary implication, to disinherit an heir."

Farish v. Cook, *supra,* involved the language "all my worldly goods, consisting of household furniture, clothing, beds and bedding, money and cattle; also whatever debts may be due me; * * *." In that connection the court said in the opinion: "In prefixing it with the words 'all my worldly,' he makes use of a phrase, which if used alone with the word 'goods,' might be reasonably supposed to embrace his lands; and this meaning of the phrase has in some instances been sustained. But the subsequent language indicates by its enumeration, that he did not intend it should include real estate, for he continued, 'consisting of household furniture, clothing, beds and bedding, money and cattle.' He wills her his worldly goods, and tells what they are, thus restricting the meaning to personal property." See, also, Annotation 54 A. L. R. 97.

It will be observed here that the words "both personal and moneys" modified or qualified by enumeration, explanation, and limitation "all my worldly. posessions (possessions) * * *." Thus we do not have the question of whether or not the latter words standing alone would devise real estate because they were clearly qualified by subsequent description. Therefore, we conclude that from all of the context, personal estate only was in contemplation of testatrix when the will was executed. To hold otherwise would not give any effect to the qualifying portion of the language used, and would rewrite

the will, which courts have no authority to do.

Further, the word "moneys" was followed by "which I now have may die posessed (possessed) of or may be entitled to." Testatrix doubtless used such words not only as synonymous with "personal" but also to make sure that plaintiffs received such money as she had or possessed, together with that which she would be entitled to in the future, such as that due on the property settlement heretofore described, which was not completed until after her death.

Cases relied upon by plaintiffs are distinguishable. The wills therein either used all-inclusive language without qualification limiting their meaning, or used limited language followed by unlimited all-inclusive qualifications. They are not controlling here. Under the language here employed, the word "personal" does not mean "the property of or pertaining to myself," or "in the sense of own—my own property," or "the property I own personally" as argued by plaintiffs. Here the words "both personal and moneys" qualified "possessions" defining the kind of possessions bequeathed, a word which may include real estate if so intended, although such would not ordinarily be its technical meaning.

It is elementary that real estate not disposed of by will becomes intestate property and descends to the heirs at law of the testatrix. Hunter v. Miller, *supra;* Heilman v. Reitz, 89 Neb. 422, 131 N. W. 909.

For the reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.