In re Estate of Daisy Coryell, deceased.
Martin A. Katt et al., Appellees, v. Lorraine Leland
Coryell Claussen, Appellant, Impleaded with Pearl
Parker et al., Appellees.
118 N. W. 2d 1002

Filed January 4, 1963. No. 35258.

Chambers, Holland, Dudgeon & Hastings, for appellant.

Davis, Thone, Bailey & Polsky, Healey & Healey, and Jacobs & Bennion, for appellees Parker et al.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This action involves the construction of the codicil to the last will and testament of Daisy Coryell, deceased, who will hereinafter be referred to as Daisy. The deceased husband of Daisy, L. L. Coryell, Sr., who will hereinafter be referred to as Coryell, Sr., was the sole beneficiary of Daisy's last will and testament, which was executed February 9, 1950. The Coryells had reciprocal wills and Daisy was named as the sole beneficiary of the estate of Coryell, Sr. On April 15, 1950, Daisy executed a codicil to her last will and testament providing for the contingency of the death of her husband. Coryell, Sr., also executed a like codicil to cover the contingency of Daisy predeceasing him. Daisy survived and was the sole beneficiary of the Coryell, Sr., estate. Daisy's last will and testament and codicil were admitted to probate November 5, 1959.

The pertinent provisions of the codicil are as follows: "FIRST: One-half of all of my property, both real and personal to 'L. L. Coryell & Son Park Foundation, Incorporated' and one-half to my two sisters Pearl Parker and Myrtle Miller, and my husband's niece Mary Bailey share and share alike.

"SECOND: I make no bequest to my granddaughter Lorraine L. Coryell for the reason that she has been

amply provided for through an Insurance Trust."

The codicil contained no residuary clause. Lorraine L. Coryell Claussen, the granddaughter of Daisy, hereinafter referred to as Lorraine, is her sole and only heir in the absence of a will. The Insurance Trust referred to was set up by Lorraine's father, L. L. Coryell, Jr., in 1942. Coryell, Sr., died November 19, 1953. Myrtle Miller, Daisy's sister, hereinafter referred to as Myrtle, died April 8, 1959. Daisy died September 17, 1959, just a little over 5 months later. In addition to her granddaughter and sister, Daisy was also survived by a brother, Glenn Parker. In addition to Mary Bailey, three nephews and one other niece of Coryell, Sr., survived Daisy. Pearl Parker and Mary Bailey were single women and Myrtle Miller was a childless widow. Glenn Parker, the brother of Daisy, who is one of the appellees, is assignee of one-half of whatever interest Pearl Parker may acquire because of the death of her sister Myrtle.

After the death of Coryell, Sr., in 1953, a dispute arose as to the right of Coryell, Sr., and Daisy to execute the wills of 1950. Lorraine and her mother, Lorraine B. Coryell, claimed rights under joint and reciprocal wills executed by their father and husband, and Coryell, Sr., Daisy, and Lorraine B. Coryell in October 1942. A settlement was made by Daisy as executor of the estate of Coryell, Sr., and personally, whereby Lorraine and Lorraine B. Coryell were paid $50,000 in cash and were conveyed a remainder interest in a farm in Nemaha County valued at $25,000. This transaction was consummated on February 9, 1954, at which time a receipt and final release and discharge was signed by Lorraine and Lorraine B. Coryell. The part of the release pertinent to this inquiry is as follows: "* * * the undersigned Lorraine B. Coryell and Lorraine L. Coryell hereby release and forever discharge any and all claims, demands and actions, rights, benefits and/or anything of value now due them or that may become due them or either of them from the estate of L. L. Coryell, Sr.,

deceased, and from Daisy Coryell individually and from the estate of Daisy Coryell after her death that may be due them or either of them now and at any time in the future *by reason of the said joint, mutual and/or reciprocal Wills alleged to have been executed by the said L. L. Coryell, Sr., deceased, Daisy Coryell, L. L. Coryell, Jr., deceased, and Lorraine B. Coryell.*

"It is further understood and agreed by any and all concerned that the settlement and payments made hereunder is a full, complete and final settlement now and for all time and the considerations are paid the said Lorraine B. Coryell and Lorraine L. Coryell, her daughter, to end for all time any future claims, demands and/or actions or future litigation against the estate of L. L. Coryell, Sr., deceased, and against Daisy Coryell individually and against the estate of Daisy Coryell after her death and against any of the respective representatives thereof, *by reason of the contentions concerning the alleged joint, mutual and/or reciprocal Wills above mentioned."* (Italics supplied.)

It is evident that in the event Coryell, Sr., predeceased her, Daisy divided her estate into two halves. One she gave to L. L. Coryell & Son Park Foundation, Incorporated. As to this provision there is no question herein. The other portion she divided, share and share alike, among three designated persons, two related to her by blood and the other a niece of her deceased husband. There can be no question but that Daisy intended to dispose of her entire estate, and if she had died previous to April 8, 1959, she would have done so. The difficulty arises because she was predeceased by her sister Myrtle, one of the beneficiaries. The anti-lapse statute, section 30-228.03, R. R. S. 1943, is not operative because Myrtle, who was related to Daisy, was not survived by issue.

It is appellees' contention that the provision for Myrtle did not lapse for three reasons: First, it was a class gift; second, because Lorraine cannot take be-

cause of the release and settlement; and, third, because Lorraine was specifically disinherited by the codicil. We will discuss these contentions in inverse order.

Daisy stated she was making no provision for Lorraine because she was provided for through an insurance trust. We do not construe this provision to be an attempt to disinherit or to exclude Lorraine, but rather as an explanation as to why no provision was being made for her in the will. However, even if we were to so construe it, which we do not, and to hold that the provision for Myrtle lapsed, then under our holding in Kula v. Kula, 149 Neb. 347, 31 N. W. 2d 96, Lorraine would still inherit. In that case, the testator said in his will: " 'THIRD: It is my sincere wish, desire and intention that my sons, namely, Thomas Kula, Joseph Kula and Richard Kula, receive nothing under this my Last Will and Testament, for the reason that they have received their proportionate share of my property during my life time.' " This was specifically an intent to exclude the named individuals. We held in that case as follows: "The fact that a will expresses the intention of the testator to disinherit certain persons does not prevent such persons from sharing as heirs at law or next of kin in property as to which the testator died intestate." This rule is controlling on appellees' third contention.

Appellees' second contention is so obviously incorrect that we will consider it only briefly. It should be evident from the portions of the release set out above, particularly the portions italicized, that the settlement was restricted to rights accruing under the joint and reciprocal wills executed in 1942. The dispute concerned the right of Daisy and Coryell, Sr., to execute new wills after the death of Lorraine's father, whose will was executed pursuant to the agreement culminating in the 1942 wills. The settlement agreement does not in any way reflect an intention to settle any rights of inheritance which might accrue subsequently because of the blood relationship of the parties.

This brings us to the only real point in issue. Did Daisy create a class gift? Ordinarily, a class gift is a gift to two or more persons who are not named and who have one or more characteristics in common by which they are indicated or who answer to a general description. As we said in Lacy v. Murdock, 147 Neb. 242, 22 N. W. 2d 713: "A gift to a class is a gift to a number of persons not individually named, but all answering a · general description." In that case, quoting in part from Thompson on Wills (2d ed.), § 306, p. 384, we also said: " 'Where the testator clearly intends that his gift shall pass to the beneficiaries as a class, there is no lapse by reason of the death of any one of them before the class is determined. The death of one member of the class before the testator will not occasion a lapse of any part of the gift, but those of the class who survive the testator will take the whole. * * * *When, however, the parties to whom a legacy is given are not described as a class, but by their individual names, though they may constitute a class, the death of any one of them, before the testator, causes a lapse of the legacy intended for the legatee so dying.' "* (Italics supplied.)

It is possible, however, that the names of the prospective beneficiaries may be given and yet the gift may be to a class. We have such a situation in In re Estate of Zimmermann, 122 Neb. 812, 241 N. W. 553. There the testator gave nominal bequests to his children living with their mother, his divorced wife. The residue of his estate he devised and bequeathed to the two sons who had helped accumulate the estate and who have lived with him and apart from the rest of the family for several years. It was evident that the special situation present in that case clearly indicated the creation of two distinct classes even though the individual members were specifically named.

In those cases in which a class gift has been found where the beneficiaries are specifically named, the context of the instrument usually indicates that the names

of the beneficiaries were added to the description of them as members of a class for the purposes of greater certainty of identification, and that the paramount intention of the testator was to make a gift to a class.

The general rule is well expressed in 4 Page on Wills (Bowe-Parker Revision), § 35.4, p. 495: "If the gift is made to beneficiaries by name, the gift is, prima facie, not one to a class, even if the individuals who are named possess some quality or characteristic in common. This is particularly true if the beneficiaries are not described as having some quality or attribute in common."

Clearly in the instant situation the will discloses no quality or attribute that all of the beneficiaries possess in common except that of being females, and there were omitted relatives who would also be in this category. The individuals are specifically named and no mention is made of a class. There is no description of any nature, general or otherwise, from which it could even be inferred that a class was intended.

Appellees argue that the Coryells were obviously thinking of their closest single female relatives (two of the beneficiaries were unmarried women and the other was a childless widow) other than Lorraine, as a group, when they executed the codicils, and they contend this is strengthened by the provision relating to Lorraine. Even if it was conceded that they had them in mind because of their status, certainly it is not evident that because of that fact the Coryells intended to create a class gift. They undoubtedly wished to provide some measure of security for the individuals named. This they did by giving them each a one-sixth of the estate. It is not apparent, however, because they did so that they wished the individuals named to have more than the portion of the estate actually given to them. The codicil was not drawn by someone ignorant of the law but was drawn by an experienced lawyer who could not help but be familiar with the general rule set out above. While the Coryells may have considered that one-sixth

of the estate was necessary to provide the desired security for the individuals named, they might have had other ideas if they had been told the one-sixth could be increased by the death of any of the named beneficiaries. It is not the province of the courts by construction to supply omissions or to write residuary clauses for testators who neglect to do so. The object and purpose of the court is to carry out and enforce the true intention of the testator *as shown by the will itself* in the light of attendant circumstances under which it was made. In re Estate of Dimmitt, 141 Neb. 413, 3 N. W. 2d 752, 144 A. L. R. 704.

It seems clear to us that we would be doing violence to established rules of law if we were to read qualities and attributes into the will sufficient to create a class and then to hold that the individuals were specifically named to help identify the class. To do so would be to make a will for the testator which she might or might not have made if her attention had been specifically directed to the possibility of lapsation.

There is no claim asserted that there is any ambiguity in the codicil. The persons involved are specifically named and their relationship is clearly stated. The point to be construed is whether Daisy contemplated the fact that any or all of the beneficiaries might predecease her and intended to cover that eventuality. To meet this point, appellees argue, as we said in Attebery v. Prentice, 158 Neb. 795, 65 N. W. 2d 138: "There is a presumption that a testator intended to dispose of his entire estate and not to die intestate either as to the whole or as to any part thereof. Where a provision of a will is fairly open to more than one construction, a construction resulting in an intestacy as to any part of the estate will not be adopted if, by a reasonable construction, it can be avoided." To this we must reply that such presumption is not a rule of law but is merely a construction aid to determine but not to supply the intent of the testator.

We said in Jacobsen v. Farnham, 155 Neb. 776, 53 N. W. 2d 917, 33 A. L. R. 2d 543: "It is a natural presumption that a testator making his will intended to dispose of his whole estate and not to die intestate as to any part of it, and in construing doubtful expressions this presumption has weight, *but it cannot supply the actual intent of the testator to be derived from the language of the will.*" (Italics supplied.) In that case we also said: "In construing a will a court is required to give effect to the true intent of the testator insofar as it can be collected from the whole instrument, if such intent is consistent with applicable rules of law." This means we are to determine what the testator actually intended to do and not what we think testator might have done if his attention had been directed to a possible contingency.

In the earlier case of Hunter v. Miller, 109 Neb. 219, 190 N. W. 583, we said: "It is further true that there is a presumption that the testator intended to devise all of his property, and did not intend to die intestate as to any part of it, but that presumption is not stronger than the other presumption, which is, that a testator will not be held to have disinherited an heir except where that conclusion is impelled by the express provisions or by necessary implication from provisions specifically set forth." As suggested, we do not construe the "Second" proviso of the codicil as an express intent to disinherit Lorraine but rather as an explanation as to why no provision was made for her as the will was drawn.

We hold that no class gift is involved; that Daisy died intestate as to the portion of the estate devised and bequeathed to Myrtle; and that Lorraine as her sole and only heir inherits all intestate property.

For the reasons given, we reverse the judgment entered herein and remand the cause with directions to enter a judgment in conformity with this opinion.

REVERSED AND REMANDED.