IN RE ESTATE OF MARY V. WALKER, DECEASED.
GRACE M. WALKER, PERSONAL REPRESENTATIVE OF THE ESTATE
OF JAMES O. WALKER, DECEASED, APPELLANT, V. LAWRENCE
WALKER, PERSONAL REPRESENTATIVE OF THE ESTATE OF MARY V.
WALKER, DECEASED, APPELLEE.

402 N.W.2d 251

Filed March 6, 1987.    No. 85-481.

Patrick J. Nelson of Jacobsen, Orr & Nelson, P.C., for appellant.

Denzel R. Busick of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

When Mary V. Walker, 91 years of age, died on May 15, 1984, her survivors included her brother, James O. Walker, and 13 nieces and nephews. Mary's uncontested will, executed in 1977, was admitted to probate in the county court for Harlan County. Among the directions and dispositions contained in Mary's will were:

### IV

In the event that my sister-in-law Alta Walker shall survive me, I devise the sum of $200.00 without restriction or reservation.

### V

If my brother, James O. Walmer [sic] shall survive me, I give and devise to my brother a life estate in and to the following described real estate [legal description omitted for the purpose of this opinion], he to have the income therefrom for and during the period of his natural lifetime . . . . Upon the death of James O. Walker as the life tenant, or upon my death if my brother James O. Walker shall not have survived me [at this point in her will, Mary specified a procedure for sale of her real estate to family members]. If none of the Walker family members above named desire to purchase the land it shall be sold by my Personal Representative in whatever manner he shall deem to be for the best interest of my estate. My Personal Representative, if a Walker family member herein named, shall not be disqualified from buying the land by reason of his fiduciary capacity. The proceeds realized from the sale of the land shall be distributed to the persons and in the manner directed in paragraph VI of this will.

### VI

All of the rest, residue and remainder of my estate . . . shall be sold and converted to cash by my Personal Representative . . . . Whenever my residuary estate has been converted into cash as herein directed the same shall be distributed and I devise said residuary cash estate as

follows:

A. If my brother James O. Walker shall survive me, I give and bequeath one-third thereof to him without restriction or reservation. If my brother James O. Walker shall not have survived me, his share of said cash residuary estate shall lapse and be divided to the beneficiaries named in the following sub-paragraph.

B. I give and bequeath the two-thirds remaining of my cash residuary estate to the following nephews and nieces who are living at the time of my death, namely [here, Mary's will listed 13 nieces and nephews as individual devisees] . . . .

Mary's will then designated her nephew Lawrence Walker as personal representative.

At her death, Mary owned the real estate described in paragraph V of her will. Surviving Mary were James O. Walker, Alta Walker, and the 13 nieces and nephews named as devisees in paragraph VI of Mary's will. One of Mary's nephews, Lawrence Walker, was appointed personal representative and, on October 10, 1984, filed in the county court a "FORMAL PETITION FOR COMPLETE SETTLEMENT AFTER FORMAL TESTATE PROCEEDING," alleging:

5. The will of Mary V. Walker, page two, states that James O. Walker shall have a life estate in the real estate owned by Mary V. Walker and as described on page two. The real estate described on page two constitutes all of the real estate that Mary V. Walker owned at the date of her death. The will further states that the real estate is to be appraised at the time of James O. Walker's death by two disinterested appraisers and their values averaged to determine the sale price thereof. The personal representative shall then offer the same at the value so established to only the following Walker family members: [names of family members] and sell it for cash to the one accepting the same.

On page three of the will, Mary V. Walker's will further states that the proceeds realized from the sale of the land shall be distributed to the persons and in the manner directed in Paragraph VI of the will.

On page three, Paragraph VI of the will, the will states that whenever the residuary estate has been converted into cash, the same shall be distributed and devised one-third to James Walker, provided he is living at the date of Mary V. Walker's death, and the remaining two-thirds equally to the following nieces and nephews who are living at the time of Mary V. Walker's death, namely [names of 13 nieces and nephews], "the same to be divided equally between the named beneficiaries who were living as of the time of my death."

The personal representative interprets the directions of Mary V. Walker to direct and authorize that after the death of James O. Walker and after the real estate is converted to cash that the proceeds thereof would be divided equally among the nieces and nephews named above, namely [nieces and nephews] in equal shares, so that each of the persons named above would each receive a one-thirteenth share of the net sales proceeds of the real estate sold after James O. Walker's death. All thirteen of the persons so named in Mary V. Walker's will are alive at this time, but in the event one of them should die prior to James O. Walker, it would appear from a reading of the will that Mary V. Walker intended that each survive only beyond her death and there is no requirement that any of them survive James O. Walker, so that in the event one of them should predecease James O. Walker, his or her share shall not lapse but shall go to his or her heirs by the right of representation.

At the conclusion of his petition, the personal representative requested that the court

D. Enter an order construing the will of Mary V. Walker so that after the death of James O. Walker and the eventual conversion of the real estate to cash, that the net sales proceeds shall be divided, a one-thirteenth share each, to [nieces and nephews], and in the event one of them predeceases James O. Walker, his or her share shall not lapse but shall go to his or her heirs by right of representation.

The "CERTIFICATE OF SERVICE" incorporated into the

petition recites that the personal representative mailed a copy of his petition to each of the 13 nieces and nephews, including himself, but not to James O. Walker. A "notice" was properly published in the appropriate newspaper, namely, notice that the personal representative had filed a petition for complete settlement and that a hearing on such petition would be held on November 1. A copy of that notice, as published on October 11, was mailed to James O. Walker.

On October 31 the personal representative filed a "SCHEDULE OF DISTRIBUTION" reflecting James O. Walker's life estate in Mary's real estate and a one-third interest in Mary's residuary estate. The schedule of distribution also reflected the $200 devise to Alta Walker. Additionally, the personal representative's schedule of distribution recited that each of Mary's 13 nieces and nephews had a "$1/13$ of $2/3$ of Residue" and a "$1/13$ remainder interest [in Mary's real estate] subject to sale of same upon James Walker's death, all as set forth in Mary Walker's Will."

A hearing on the personal representative's petition was held on November 1. The record does not indicate that any evidence was adduced in reference to the petition and does not identify persons attending that hearing. After considering the personal representative's petition, the associate county judge, who, both parties agree, was not an attorney at law, entered a "FORMAL ORDER FOR COMPLETE SETTLEMENT AFTER FORMAL TESTATE PROCEEDING," which stated:

D. The Personal Representative be, and hereby is authorized and directed to deliver and distribute title and possession of the assets of the estate to the distributees in the amount and manner set forth in the Schedule of Distribution after payment of 1984 Federal and State Income taxes.

E. The Authority of the Personal Representative shall not terminate, but shall continue until the death of James Walker, at which time, pursuant to the terms of the will, the Personal Representative shall offer the real estate of Mary V. Walker to the Walker family members named in the will of Mary V. Walker and in the manner thereof, and, in the event none of the family members shall purchase

said real estate as set forth in the Mary V. Walker will, the Personal Representative shall sell the same at public or private sale.

After the real estate is sold, the proceeds shall be distributed in equal shares to the following named persons: [names of Mary's 13 nieces and nephews], and if any predecease James Walker, his or her share shall not lapse but shall pass to his or her beneficiaries by the right of representation.

James O. Walker filed his appeal to the district court, contesting the distribution prescribed in the November 1 order entered by the associate county judge. Pending his appeal in the district court, James O. Walker, who was 79 years of age at the time of Mary's death, died, and, without any objection, Grace M. Walker, personal representative of the estate of James O. Walker, deceased, was substituted for prosecution of the appeal from the county court. The district court affirmed the associate county judge's November 1 order of distribution in the estate of Mary V. Walker, deceased.

Grace M. Walker, personal representative of the estate of James O. Walker, contends that the testamentary dispositions by Mary V. Walker's will and the nature of the associate county judge's order of distribution necessarily involved a construction of Mary's will. Such action is beyond the power of an associate county judge who is not an attorney at law, Grace Walker argues, in view of Neb. Rev. Stat. § 24-519 (Reissue 1985), which, in part, provides:

The county judge . . . may assign to associate county judges who are not attorneys at law . . . the following matters:

. . . .

(8) Any proceedings relating to decedents' estates, noncontestable inheritance tax matters, guardianship or conservatorship, except the construction of wills and trusts, the determination of title to real estate, and authorization of the sale or mortgaging of real estate.

Lawrence Walker, personal representative of the estate of Mary V. Walker, counters: "If Appellant's contention is correct,

then it has the ultimate effect of virtually gutting the statutory provisions of the county court statutes which allow county judges to delegate certain functions to associate county judges." Brief for Appellee at 7-8. Additionally, Lawrence Walker suggests that vitality and validity of the associate county judge's order are preserved by Neb. Rev. Stat. § 24-520 (Reissue 1985):

All assignments of matters to associate county judges shall be by written order signed by the presiding county judge and filed with the clerk. No order or judgment shall be void or subject to collateral attack solely because it was rendered pursuant to improper assignment to an associate county judge.

In view of the manifest intention of the Legislature expressed in the unequivocal language of § 24-519, a county judge cannot assign to an associate county judge who is not an attorney at law any matter which necessitates "the construction of wills and trusts." We also note that § 24-519 (Cum. Supp. 1986) now refers to "clerk magistrates," rather than "associate county judges who are not attorneys at law," but still denies a clerk magistrate the power to determine matters "relating to the construction of wills and trusts."

The cardinal rule concerning a decedent's will is the requirement that the intention of the testator or testatrix shall be given effect, unless the maker of the will attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy. See, *Overbeck v. Estate of Bock*, 198 Neb. 121, 251 N.W.2d 872 (1977); *Lacy v. Murdock*, 147 Neb. 242, 22 N.W.2d 713 (1946); *In re Estate of Dimmitt*, 141 Neb. 413, 3 N.W.2d 752 (1942). To arrive at a testator's or testatrix's intention expressed in a will, a court must examine the decedent's will in its entirety, consider and liberally interpret every provision in a will, employ the generally accepted literal and grammatical meaning of words used in the will, and assume that the maker of the will understood words stated in the will. See, *In re Testamentary Trust of Criss*, 213 Neb. 379, 329 N.W.2d 842 (1983); *Jacobsen v. Farnham*, 155 Neb. 776, 53 N.W.2d 917 (1952); *In re Estate of Dimmitt, supra.*

When language in a will is clear and unambiguous,

construction of a will is unnecessary and impermissible. See, *Lowry v. Murren*, 195 Neb. 42, 236 N.W.2d 627 (1975); *Wall v. Wall*, 157 Neb. 360, 59 N.W.2d 398 (1953). See, also, G. Thompson, The Law of Wills § 210 (3d ed. 1947). As a corollary of the immediately preceding rule, when ambiguity exists in a testamentary provision, construction of a will is necessary. Ambiguity exists in an instrument, including a will, when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable interpretations or meanings. See, *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 334 N.W.2d 463 (1983); *American Sec. Servs. v. Vodra*, 222 Neb. 480, 385 N.W.2d 73 (1986). A patent ambiguity is one which exists on the face of an instrument. *In re Estate of Corrigan*, 218 Neb. 723, 358 N.W.2d 501 (1984); *Jacobsen v. Farnham, supra. Construction* includes the process of determining the correct sense, real meaning, or proper explanation of an ambiguous term, phrase, or provision in a written instrument. See *Koy v. Schneider*, 110 Tex. 369, 221 S.W. 880 (1920). When patent ambiguity exists in a will, a court must resolve such ambiguity as a matter of law. See *In re Estate of Corrigan, supra.* Cf. *Denis v. Woodmen Acc. & Life Co., supra* (construction of an ambiguous clause in a policy of insurance). Regarding a question of law, the Supreme Court has an obligation to reach its conclusion independent from the conclusion reached by a court whose judgment is the subject of review. See *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

Although the record does not disclose that the county judge authorized the associate county judge's action in the case before us, nevertheless, the fundamental question is whether the associate county judge's order of distribution constituted a construction of Mary V. Walker's will.

There is no question that, pursuant to paragraph V of Mary's will, James Walker received a life estate in Mary's real estate. However, in paragraph V of her will, Mary did not explicitly designate persons entitled to the remainder in her real estate when the life estate would become extinguished by the death of James O. Walker as the life tenant. Rather, as expressed in paragraph V of her will, Mary stated that her real estate which

had been subject to James' life estate must be sold and proceeds "distributed to the persons and in the manner directed in Paragraph VI of this will." In paragraph VI, Mary disposed of her residuary estate by directing that James, if he survived Mary as is the fact, shall receive one-third of the residuary estate. At that point, a number of questions arise. Did Mary, in paragraph V of her will and by reference to a plan of distribution specified in paragraph VI(A), intend to devise to the heirs or devisees of James O. Walker a one-third interest in the proceeds realized when Mary's real estate is sold? On James O. Walker's death and when the real estate is sold, are sale proceeds distributable as directed in paragraph VI(A), namely, "one-third thereof [to James O. Walker] without restriction or reservation," so that a one-third share of the sale proceeds must be distributed to the heirs or devisees of James O. Walker? Implicit in the associate county judge's order is an answer in the negative to each of the foregoing questions. As a result of such answer, James O. Walker and his heirs or devisees are denied a share in the proceeds which will be realized from the sale of Mary's real estate. Although the 13 nieces and nephews have survived Mary, what distribution shall be made of the sale proceeds if one of the 13 nieces or nephews is not living at the death of James O. Walker? Does the share of that niece or nephew lapse and become distributable among the remaining named nieces and nephews living at James' death? Is the share of a named niece or nephew who has predeceased James O. Walker contained in the estate of such deceased niece or nephew? By virtue of the associate county judge's order for distribution, each of the three preceding questions was answered, excluding James O. Walker's heirs or devisees from sharing proceeds which will be realized on the sale of Mary's real estate. The preceding questions, seeking interpretive answers, may not be exhaustive, but do illustrate a point. There is more than one reasonable interpretation or meaning for the provisions in paragraphs V and VI of Mary's will. Mary's testamentary provisions produced contradictory or incompatible results, depending on Mary's intention for distribution of the sale proceeds. Thus, there is patent ambiguity in some provisions found in Mary's will and,

consequently, a need for construction of the will to answer at least two questions: Did James O. Walker receive a life estate, one-third of Mary's residuary estate, and nothing more? Or, did James O. Walker receive a life estate, one-third of Mary's residuary estate, and a property right in the sale of proceeds which will be realized on liquidation of Mary's real estate?

As an analysis of the associate county judge's action, and to paraphrase an apocryphal aphorism, we conclude that if such action looks like a construction and acts as a construction, the action is a construction. Ostensibly, the associate county judge's order is based on the premise that the expressions in paragraphs V and VI of Mary's will demonstrate Mary's intention to exclude James and his heirs or devisees from receiving a distribution of proceeds from the sale of Mary's real estate. That order was entered in response to the personal representative's request for action, "construing the will of Mary V. Walker," consistent with the allegations in the personal representative's petition. In entering his order for distribution of Mary's estate, the associate county judge had to answer at least one of the questions we have suggested, if not answer all the questions previously posed. Answering any question we have posed requires construction of Mary's will. What answer the associate county judge selected as a construction of Mary's will is unimportant for the purpose of this appeal. What is important is the inescapable fact that distribution of Mary's estate depends on Mary's intention ascertained from a construction of her will. Section 24-519 clearly places such construction of a will beyond the power of an associate county judge who is not an attorney at law. While we are reviewing a question concerning the power of an associate county judge who is not an attorney at law, we add that in no wise are we deciding a question concerning the correctness of any construction placed, or to be placed, on any word, phrase, or provision in Mary V. Walker's will. Moreover, none of our suggested questions illustrating that some patent ambiguity exists in the language of the will of Mary V. Walker dictates or indicates a particular construction regarding any language in Mary V. Walker's will. Rather, we determine and hold only that the action taken by the associate county judge constituted a

"construction" of Mary's will, an action expressly excluded from the power otherwise authorized in and conferred by § 24-519.

Further, we do not state, and do not hold, that there is ambiguity regarding every devise prescribed in Mary's will. By virtue of the language which is clear and unambiguous in paragraphs IV, V, and VI, Alta Walker received a $200 devise and James O. Walker received a life estate in Mary's real estate plus one-third of Mary's residuary estate. No construction of Mary's will was necessary regarding those devises just mentioned. Under the circumstances, it became the duty of Lawrence Walker, as personal representative of the estate of Mary V. Walker, deceased, to make expeditious distributions in accordance with Mary's intent expressed in the plain provisions of paragraphs IV, V, and VI in Mary's will. Neb. Rev. Stat. § 30-2465 (Reissue 1985) provides:

A personal representative shall proceed expeditiously with the settlement and distribution of a decedent's estate and, except as otherwise specified or ordered in regard to a supervised personal representative, do so without adjudication, order, or direction of the court, but he may invoke the jurisdiction of the court, in proceedings authorized by this code, to resolve questions concerning the estate or its administration.

See *Kenfield v. Dudek,* 135 Neb. 574, 283 N.W. 209 (1939).

Next, as viewed by the personal representative in this case, any irregularity in the associate county judge's order is absolved or neutralized by § 24-520. We take a different view of that statute. The case before us involves a direct appeal from the county court's order and, therefore, is not a collateral attack on such order. In *Vasa v. Vasa,* 163 Neb. 642, 80 N.W.2d 696 (1957), after examining the validity of a district court's order entered at chambers, an action then unauthorized by the Nebraska Constitution, this court stated at 645, 80 N.W.2d at 698: "This situation does not go to a procedural irregularity but to the power of the court and the legality of the order. Any judgment or ruling so entered without authority or jurisdiction is void." Similar to the situation in *Vasa, supra,* the present case does not involve some procedural irregularity, but concerns the

very power of the associate county judge to enter the order questioned in the present case. As already noted, § 24-519 expressly denies an associate county judge the power to construe a will. Therefore, § 24-520 does not preserve the order entered by the associate county judge in the case under review.

With the exception of the devise to Alta Walker, the devise of a life estate to James O. Walker, and the devises pertaining to Mary V. Walker's residuary estate, the distribution ordered by the associate county judge involved a construction of Mary V. Walker's will—an action taken outside the power authorized and conferred in § 24-519. Therefore, we reverse the judgment of the district court insofar as such judgment relates to distribution of proceeds from the sale of real estate owned by Mary V. Walker and remand this matter with direction that the district court shall set aside the county court's order of distribution regarding such proceeds of sale and shall remand this matter to the county court for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.

BOSLAUGH, J., dissenting.

If the associate county judge construed the will of the deceased in entering the order of distribution, it was at most erroneous, not "void or subject to collateral attack." Neb. Rev. Stat. § 24-520 (Reissue 1985). If the order was otherwise correct, it was at most error without prejudice.

Upon appeal to the district court, all questions of *law* were determined anew. The order of the district court affirming the order of the county court cured any error there may have been in the order of distribution entered in the county court.